No. 13,177.

PRING *v.* UDALL ET AL.
(31 P. [2d] 1113)

Decided April 16, 1934.

24

Mr. H. T. McGarry, for plaintiff in error.

Messrs. Lee, Shaw & McCreery, Mr. Charles D. Bromley, for defendants in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

We will refer to parties hereto as plaintiffs and defendant, or as Udall, Greer and Pring.

This action was brought by Udall and Greer, as copartners, to recover a balance claimed to be due from Pring under a contract for the purchase and sale of cattle, dated August 8, 1928, at Phoenix, Arizona.

Udall and Greer were copartners in a cattle business in Apache county, Arizona. In July, 1928, one McDermott, representing himself as agent for E. A. Pring of Colorado Springs, Colorado, interviewed Udall relative to the purchase of cattle from the partnership for Pring. McDermott examined the cattle on the partnership ranch of Udall and Greer, and offered Udall eight and one-half cents a pound for 820 steers, which was accepted by Udall, provided he received a written contract of sale. McDermott drew a draft on Pring for the purchase price of the cattle. Pring refused to honor the draft until he had "something to show what he was paying for." McDermott then drew the contract involved in this action, with Udall as vendor and Pring as vendee, mailed same to Pring at Colorado Springs, Colorado, and attached sight draft for $4,000, which was paid by Pring after seeing the contract. McDermott handed Udall the contract which he had signed as agent for Pring, together with the $4,000 which Pring had paid, and the contract was then signed by Udall. When the cattle were gathered at the ranch, they were inspected by McDermott, and then driven to Pinta, Arizona, where they were to be weighed and shipped as per contract. Pring, in a discussion with Udall, McDermott and one McPherson, made the objection that there was a deficiency in the number of native steers that were called for in the contract, whereupon it was agreed between Udall and Pring that $500 would be deducted from the contract price. After some of the cattle were weighed, Pring claimed that the scales were not correct. To settle this complaint, it was agreed that the cattle would all be weighed then and there, and again at Raton, New Mexico. Pinta weights totalled 456,965 pounds. The next evening the cattle arrived at Raton, and it was found that there were no scales at Raton. Udall wanted to hold up the shipment, and Pring proposed that the cattle be weighed at Pueblo, Colorado, and if weights were not satisfactory to Udall, the cattle would be put on pasture at Masters,

Colorado, for a fill and rest, and after they were in like condition as when originally weighed at Pinta, they would be again weighed and settlement made on such weights. Udall returned to Arizona and then wired Pring demanding payment on Pinta weights, because, on account of the long trip to Pueblo, there would be large shrinkage shown by Pueblo weights. This telegram was received by Pring in Pueblo before the cattle were weighed.

The cattle were weighed in Pueblo and totaled 422,550 pounds or 34,415 pounds less than the Pinta weights, which, it is claimed by plaintiffs, was shrinkage on account of 650-mile haul. For this difference, at eight and one-half cents per pound, plaintiffs were awarded a jury verdict plus interest.

Pring sent Udall a check based on Pueblo weights, but stopped payment on account of an existing chattel mortgage on the cattle, which was later released and the check paid. Udall notified Pring that he expected settlement on Pinta weights, but agreed with Pring in January that a test shipment be made in the spring to determine the shrinkage on a haul from Pinta to Pueblo. In May, Pring, at the Udall ranch, selected cattle for such a test, weighed the cattle near Pinta and shipped them to Colorado Springs, where they were reweighed, showing an average shrinkage of 45 pounds per head. Pring made no settlement on this agreed basis, and in November he selected 21 more steers, shipped them to Pueblo, and found a 32-pound shrinkage. He again refused to settle and was sued by plaintiffs for the difference between the original Pinta weights and the weights at Pueblo. The jury found against Pring and assessed plaintiffs' damages in the sum of $3,105.73. Pring claims error and submits same under three heads as follows: (1) There was no contract between plaintiffs and defendant upon which defendant was liable; (2) there was an accord and satisfaction between plaintiffs and defendant, as a matter of law, and the court erred in submitting the question

of accord and satisfaction to the jury; (3) refusal of the court to give the following instructions:

"Defendant's Request No. 1: You are instructed that if you find from a preponderance of the evidence that Robert McPherson of McPherson Brothers, bought the cattle in question from the plaintiffs, and that the defendant, E. A. Pring, was the banker in the transaction, your verdict should be for the defendant.

"Defendant's Request No. 4: You are instructed that if you find from a preponderance of the evidence that there was no shrink in the cattle, after the same had been fed and watered at Raton and Pueblo at the time said cattle were weighed at Pueblo, your verdict should be for the defendant."

As to the first contention of no contract on which defendant was liable, defendant claims there was no agency proved whereby McDermott had authority to sign the contract, and that the contract was abandoned. He insists that the evidence fails to show that he ratified the contract after its execution. Defendant raised no objections to the instructions upon which this question was submitted to the jury, which found against him. A careful consideration of the preceding statement of the case dissipates the contention of no agency and no ratification. On the contract, prepared by the agent and submitted to defendant "showing what he was paying for," the defendant paid $4,000, and on the terms of the same contract, he later paid $21,348.75, to the use of Udall, for balance on the cattle, as figured by defendant on contract as per Pueblo weights. The ratification of the contract is so clear and conclusive as to admit of no argument. The original contract was not abandoned as claimed by defendant. If it was, what became of the money paid thereon? The two payments remain as made on the contract as executed. The deduction of $500 on account of shortage of native steers was not in any sense a new contract or abandonment of the old, it was a modification. Throughout the transaction, the price per

pound remained as fixed by the contract, the difficulty culminates in the number of pounds to be paid for. Any new arrangements concerning the deal were concerning plans to ascertain a satisfactory agreement about the disputed question of weights, and this question was always between Pring the defendant and plaintiff Udall. So far as Udall is concerned, the evidence shows that the original sale stood throughout the deal. Thus falls defendant's claim of abandonment of contract. To sustain an abandonment claim or a novation, defendant had to and does admit a valid original contract; he cannot maintain inconsistent positions. In one breath he denies a contract, and in the next says it was abandoned. He did not produce a word of testimony to show a new contract agreed upon by Udall, or the validity of same, if made, and there was no showing as to disposition of the dealings under the old contract or a substitution of a new contract as fixed by the parties. There was not sufficient evidence on this question to support defendant's requested instruction No. 1, which was properly refused.

As to the second contention, that there was an accord and satisfaction, this is based on the fact that Pring, after weighing the cattle at Pueblo, against Udall's wired objections, sent a check for the Pueblo weights in a letter stating it was in full settlement. The check did not bear a full settlement statement as is shown by Exhibit 5. The letter of transmittal or copy is not in evidence. Pring did not write the letter, but testified together with Mrs. Pring, who wrote the letter, as to its substance. The immediate reply of Udall, on receipt of the check and letter, would indicate the contents of the transmittal letter, Udall's reply being as follows:

"I am in receipt of your check for $21,348.75 in full payment of the weights of the steers at Pueblo stock yards, as per the weighers way bill, which you attached.

"As you no doubt have figured, this makes a difference of $2,992.27 with the weights at Jamieson's scales in Arizona and then deducting the $68.00 for weighing at

Pueblo, would make a difference of $2,924.27. Of course, you will not expect me to be satisfied with this settlement and I am writing to so notify you that I am not satisfied. As you know, the cattle could not be shipped that far without at least that much of a shrinkage on 820 head of cattle; that was the reason I wired you from Holbrook when I was reassured that the Jamieson scales were all right, that it would be useless to weigh them at Pueblo. You admitted to me yourself that the cattle could not be shipped that far without a very material shrinkage on them.

"As per your agreement with me, I will come to Denver to have the cattle reweighed after they have filled up and are in as good condition as when delivered at the railroad in Arizona. Please notify me when to be there. As you remember, you agreed to have the cattle driven back two miles from the pasture and reweighed at Masters."

Proof of the satisfaction must be clear. Meeting of the minds is essential. The acceptance, if a tender in full is made, must be in terms that will not admit of doubt, and must be clear and unequivocal, which acceptance may be specific or presumed from silence.

Counsel for Pring contends that there was a novation. Every novation must be voluntary on the part of both parties and consent is always exacted. "The plea is an affirmative one. To sustain it is the burden of the pleader. * * * Proof of the condition and the acceptance of the money in satisfaction must be clear." *Rio Grande County v. Hobkirk*, 13 Colo. App. 180, 56 Pac. 993. It must be clearly shown that Udall understood that he was accepting payment of all balance on cattle based on the Pueblo weights, and accepted the check with that understanding. No rational person could say, after reading Udall's acknowledgment, that he so accepted it. If this condition of accord and satisfaction was beyond doubt in Pring's mind, why did not he rely on it, instead of arranging for, and assisting in, subsequent shipments

of cattle for the purpose of ascertaining the true difference in the Pinta and Pueblo weights? This would dispel any doubt on the accord and satisfaction question. In this case it is not the unsuccessful attempt to make a new agreement, if there was such, but its execution, that would discharge the old contract. That Udall kept the check is not conclusive of accord and satisfaction, but is a question for the jury. However, in the last analysis, the circumstances of the case on the accord and satisfaction question, presented a disputed question of fact which was by proper instruction submitted to a jury and determined against this defense.

There was no error in refusing defendant's requested instruction No. 4, as same was covered by instructions given in the case.

Judgment affirmed.

Mr. Chief Justice Adams and Mr. Justice Burke concur.