**FEDERAL LUMBER COMPANY,**
Plaintiff-Appellee,

v.

**Edmon C. WHEELER and Melody H.
Wheeler, Defendants-Appellants.**

No. 80SA202.

Supreme Court of Colorado,
En Banc.

Oct. 5, 1981.

Stark & Ker, Steven W. Stark, Durango, for plaintiff-appellee.

Nunn & Dunlap, Leslie E. Nunn, Farmington, N. M., for defendants-appellants.

ROVIRA, Justice.

This is an appeal by Edmon and Melody Wheeler (Wheelers) from a judgment of the district court foreclosing a mechanic's lien in favor of Federal Lumber Company (Federal Lumber). The case was transferred to this court from the Colorado Court of Appeals because of the constitutional issue raised by the appellants.[1] We affirm.

The Wheelers entered into an agreement with Steve Alton to construct a residence. Alton, who was in the construction business, had an open account with Federal Lumber and purchased some of the materials for the Wheeler residence from Federal Lumber.

A dispute arose between the Wheelers and Alton over the quality of the work performed and the price. When the dispute could not be resolved, Alton ceased work on the house. At a meeting between Alton and the Wheelers on August 17, 1977, Alton accepted a final payment for work performed, signed a lien waiver, and advised the Wheelers that he still had a balance due at Federal Lumber.

Subsequently, Federal Lumber gave the Wheelers notice of its intent to file a lien and filed a lien with the clerk and recorder. Federal Lumber then filed a complaint against the Wheelers, Alton, and Mesa Verde Savings and Loan Association in which it sought a personal judgment against the Wheelers and Alton for $10,631, foreclosure of its lien, and a determination that its lien had priority over the deed of trust held by Mesa Verde Savings and Loan.

1. Section 13–4–102(1)(b), C.R.S.1973, confers initial jurisdiction over appeals in which the constitutionality of a statute is in question upon the supreme court. The court of appeals referred the case to this court pursuant to section 13–4–110(1)(a), C.R.S.1973.

Alton admitted the allegations of the complaint but claimed that he was unable to make payment because the Wheelers had not paid him. He filed a cross claim against the Wheelers alleging in the alternative that he was owed money upon either a fixed sum contract, an implied agreement to pay a reasonable amount, or *quantum meruit.*

The Wheelers denied all claims of Federal Lumber and, by way of affirmative defense, urged that Federal Lumber was estopped from any recovery. They also cross claimed against Alton alleging breach of contract for the construction of their home, breach of express and implied warranties, and fraud. By way of relief, they requested that if they were held liable to Federal Lumber then Alton be held liable to them for the same amount, general and exemplary damages, attorneys fees, and costs. In a pretrial order prepared by all counsel, the Wheelers notified the court of their contention that the mechanic's lien law was unconstitutional.

The Wheelers filed a demand for a jury trial, and in the pretrial order they agreed that the jury would decide the amount of money, if any, owed to Federal Lumber by Alton and the Wheelers and the court would decide, as a matter of law, the timeliness of the notice of lien and the priority of the lien. The trial court on its own motion, however, ordered that a jury be dispensed with and removed the case from the jury trial calendar.

After a bench trial, the court found that the materials sold by Federal Lumber were charged to Alton's account, were delivered and incorporated into the Wheelers' house, and that Federal Lumber had a valid lien for $8,944. The court entered judgment against Alton and the Wheelers, authorized foreclosure pursuant to the mechanics' lien laws, and determined that the lien had priority over the deed of trust held by Mesa Verde Savings and Loan.[2]

As to the agreement between Alton and the Wheelers, the court found that there was no specific contract for the construction of a house between the parties and that any sum due Alton for work performed would be based on *quantum meruit.* The court concluded that the payment made to Alton on August 17, 1977, amounted to an accord and satisfaction between the parties and was a complete release by the parties of all claims one against the other.

The trial court also concluded that the Wheelers should have judgment against Alton for any payments they might make on Federal Lumber's judgment; that there was no evidence to support the estoppel argument raised by the Wheelers against Federal Lumber; and that the mechanic's lien law is constitutional.

The Wheelers have raised twenty separate issues on appeal. For the purposes of this opinion they will be considered in five classifications: (1) whether the trial court erred in dispensing with a jury; (2) the constitutionality of the mechanic's lien law; (3) evidentiary rulings of the trial court; (4) whether the trial court erred in finding that Federal Lumber was not estopped from claiming a mechanic's lien against the Wheelers; (5) whether the trial court erred in finding that the final transaction between the Wheelers and Alton amounted to an accord and satisfaction and a complete release of all claims by both parties. We conclude that there was no error below and affirm the decision of the trial court.

I.

The Wheelers contend that the trial court erred when, on its own motion, it struck the case from the jury trial calendar and ordered that it be tried to the court without a jury.

The Wheelers made a demand for jury trial pursuant to C.R.C.P. 38, claiming they were entitled to a jury trial on all issues raised in the pleadings. The proposed pretrial order approved by all counsel provided that a jury would decide the issue of the amount of money owed as between the parties and the court would "decide as a

2. Mesa Verde Savings and Loan has not ap-    pealed from the judgment.

matter of law the timeliness of the notice of lien, the lien and the lis pendens and the priority of the liens."

The trial court determined that the complaint fixed the nature of the suit and character of the action; and since a mechanic's lien case is equitable in nature, a right to a jury trial did not exist. *See* C.R.C.P. 39(a). We agree.

■■ The statutory proceedings to enforce rights under the mechanics' lien law are equitable in nature. *Kern v. Guiry Bros. Wall Paper Co.*, 60 Colo. 286, 153 P. 87 (1915); *Williams v. Uncompahgre Canal Co.*, 13 Colo. 469, 22 P. 806 (1889). When the action is an equitable proceeding, the issues joined are to be tried by the court. *Miller v. District Court*, 154 Colo. 125, 388 P.2d 763 (1964).

■ The Wheelers argue that trial by a jury is mandated in an equitable action when no party objects and that, by denying them a jury trial, the court denied them an inalienable right guaranteed by the constitution. The latter argument was resolved in *Setchell v. Dellacroce*, 169 Colo. 212, 454 P.2d 804 (1969), where we held that there is no constitutional right to a trial by jury in civil actions. The right to a jury trial in a civil case is derived from C.R.C.P. 38.

■ In answering the Wheelers' claim that if the parties agreed to a jury trial the trial court was without authority to rule otherwise, we have but to look to C.R.C.P. 39(a), which provides that a jury trial shall be had if demanded unless "the court upon motion or of its own initiative finds that a right of trial by jury of some or all of these issues does not exist . . . ." Thus, the trial court is not bound by the agreement of the parties if no right to a jury trial exists.

## II.

The Wheelers argue that the mechanics' lien laws, article 22 of title 38, C.R.S.1973, are unconstitutional as applied to them and that, therefore, the trial court erred in denying their motion to dismiss the complaint.

The record reflects that, prior to calling their first witness, the Wheelers presented the argument that the mechanics' lien laws were unconstitutional. The argument was not included in the transcript; thus, we are unable to evaluate it. The trial court denied the motion, holding that there were sufficient safeguards in the law regarding notice and that the statute of limitations provided protection to the owner of property.

In their brief filed in this court, the Wheelers have failed to provide us with any reasoned argument to support their claim. They state a few well known maxims (due process is guaranteed by the Fourteenth Amendment; the right to due process is absolute; due process requires prior notice) and then conclude that, since only the general contractor knows who supplied labor and materials, the requirement of the mechanic's lien law which requires the owner of property to get a release from those persons who supplied labor and materials places the owner in a position of impossibility.

■■ It is well settled that a party cannot challenge the constitutionality of a statute as applied unless he can demonstrate that the statute adversely affects his own rights. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Heninger v. Charnes*, Colo., 613 P.2d 884 (1980); *Bolles v. People*, 189 Colo. 394, 541 P.2d 80 (1975); *Pueblo v. Pullaro*, 130 Colo. 354, 275 P.2d 938 (1954). When, as in the case at hand, a party claims that a statute is unconstitutional for lack of notice, it must be shown that the party suffered injury due to the lack of notice. *American Power & Light Co. v. SEC*, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

An examination of the record reveals that the Wheelers knew that Alton was purchasing construction materials from Federal Lumber and that he still owed money to Federal Lumber when they made the final payment to him. Thus, they present an argument not based on the facts when they claim that the mechanic's lien law places them in a position of impossibility because only the contractor knows who supplied the labor and materials.

■ Based upon their failure to demonstrate that the statute was unconstitutional as applied to them, the paucity of information contained in the record, and the inadequacy of their brief,[3] we decline to consider the constitutional issue raised by them.

### III.

The Wheelers next challenge several evidentiary rulings of the trial court. They first contend that the trial court erred in refusing to admit a repair estimate into evidence. The repair estimate was prepared by a contractor who is not a party to this action, and it covered the cost of correcting alleged unworkmanlike practices of Alton. The Wheelers argue in their brief that the estimate should have been admitted into evidence because it was relevant for the purpose of showing the existence of a contract between them and Alton. They contend that the repair estimate supports the reasonableness of the price set by Alton in his bid and thus tends to show the existence of a contract.

At trial, however, this evidence was offered through the testimony of Mrs. Wheeler, rather than by placing the preparer of the estimate on the witness stand. An objection was raised, based upon the opponent's inability to cross-examine anyone on the preparation of the estimate. The Wheelers made no response to the objection, and the trial court sustained the objection. The Wheelers failed to argue for the admission of the evidence, and they failed to inform the court of the purpose of the evidence. Now they argue that the estimate should have been admitted because it was relevant for the purpose of showing that there was a valid contract between them and Alton.

■ We are at a loss to understand how a repair estimate prepared by a third party may have been relevant for that purpose; but in any case, at the trial, the objection was not based upon relevancy. The objection was based upon an inability to cross-examine anyone on the preparation of the estimate. Given the fact that Mrs. Wheeler was attempting to read the document, we take the objection to be based upon hearsay. The estimate was an out-of-court statement offered to show the truth of the matter asserted therein. Thus, it was hearsay, and the court properly excluded it. The Wheelers made no answer to the objection, and the court was presented with no hearsay exceptions which would allow the admission of this evidence. Therefore, we conclude that the trial court correctly ruled upon the admissibility of the evidence.

■ The Wheelers next contend that the trial court erred in limiting the scope of admission of two documents offered into evidence by them. The two documents were a building proposal and a bid prepared by Alton. These documents were offered by the Wheelers to show the existence of a contract between them and Alton.

At trial, the court found that the documents were prepared by Alton based upon a set of construction plans furnished by the Wheelers. However, the court determined that the house which was depicted in the plans was never built. Therefore, the documents were admitted only for the limited purpose of showing that there was a bid for the construction of a house, but not for the purpose of showing that there was a bid or a contract on the house which was actually built.

Here, the trial court, sitting as a trier of fact, determined that the house which was actually built was substantially different

---

**3.** No authorities have been cited in the appellant's brief which address the issue at hand. A review of cases from other jurisdictions indicates that ample case law exists on both sides of the issue. *See, e.g., Connolly Dev., Inc. v. Superior Court of Merced County,* 17 Cal.3d 803, 132 Cal.Rptr. 477, 553 P.2d 637 (1976); and *Tucker Door & Trim Corp. v. Fifteenth Street Co.,* 235 Ga. 727, 221 S.E.2d 433 (1975) (upholding the constitutionality of the California and Georgia mechanics' lien statutes); *Roundhouse Constr. Co. v. Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778 (1975); and *Barry Properties Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 353 A.2d 222 (1976) (finding the Connecticut and Maryland mechanics' lien laws to be unconstitutional).

from the house depicted in the plans. This is a factual determination, and this court will not disturb that finding unless it is clearly erroneous and is unsupported by the record. *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979). A review of the record discloses that there was ample support for the court's fact-findings; thus, those findings will be upheld.

The court further determined that the plan upon which these documents were based was not sufficiently concrete and that, therefore, the documents at best represented a mere proposal or estimate and did not constitute a contract.

In order to establish the existence of a contract, the parties must agree upon all essential terms. *See Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948 (1960); *American Mining Co. v. Himrod-Kimball Mines Co.*, 124 Colo. 186, 235 P.2d 804 (1951). The trial court found that the plan was not sufficiently concrete and that the house which was finally built differed extensively from the one in the plan. Clearly, all essential terms were not agreed upon. Thus, the court correctly found that there was no contract in existence and correctly limited the scope of the documents.

The next evidentiary challenge raised by the Wheelers is based upon the court's refusal to allow the Wheelers to reopen their case-in-chief in order to present a more detailed explanation of how Mr. Wheeler determined the number of sheets of siding used in the construction of the house. During their case-in-chief, Mr. Wheeler testified that he counted the number of sheets used, accounted for the loss of lumber attributed to cutting and fitting, and determined that he was charged for almost twice the amount of siding actually used. After the opposing party offered testimony which, if believed, accounted for all of the siding charged to the house, the Wheelers asked to be allowed to reopen their case in order to have Mr. Wheeler testify in more detail as to his counting of the siding.

Allowing a party to reopen its case-in-chief in order to testify in more detail to facts already presented is within the discretion of the trial court. *See Mouat v. Hildebrand*, 15 Colo. 382, 24 P. 1042 (1890). An appellate court will not disturb a ruling within the discretion of a trial court absent a showing of an abuse of that discretion. *Moseley v. Lamirato*, 149 Colo. 440, 370 P.2d 450 (1962). Here, the record supports the decision of the trial court; thus, we find that there was no abuse of discretion.

### IV.

The Wheelers next challenge the trial court's ruling that Federal Lumber was not estopped from making a claim against them. They contend that Federal Lumber should be barred from asserting the mechanic's lien claim because Frank Nye, the manager of Federal Lumber, failed to advise them that Alton still owed Federal Lumber for material supplied for the construction of the house.

The doctrine of estoppel will be applied only when each and every element of that doctrine is present. *See Susman v. Bank*, 117 Colo. 12, 183 P.2d 571 (1947); *Langley v. Young*, 72 Colo. 466, 211 P. 640 (1922). *See generally University of Colorado v. Silverman*, 192 Colo. 75, 555 P.2d 1155 (1976) (the doctrine of estoppel is not favored). An essential element of the doctrine of estoppel is that the party asserting the doctrine have a lack of knowledge as to the truth of the facts in question. *Jacobs v. Perry*, 135 Colo. 550, 313 P.2d 1008 (1957). Here, according to the testimony of Mrs. Wheeler, Alton told the Wheelers at the time of their final payment to him that he owed Federal Lumber for the materials used in the house. Thus, the Wheelers had all of the knowledge necessary to protect themselves. They could have made the final check payable jointly to Alton and Federal Lumber. Therefore, estoppel is not applicable to these facts, and the trial court properly refused to apply the doctrine.

## V.

Finally, the Wheelers contend that the court erred in finding that the August 17 transaction between them and Alton constituted an accord and satisfaction and a release of all further claims by both parties.

In its findings of fact, the trial court determined that Alton performed the work he was hired to do, that there was no specific contract, and that there was no agreement concerning the amount to be paid. It was further determined that, after the situation deteriorated to a point where the parties could no longer work together, the Wheelers invited Alton to make a final settlement. At this time, the entire situation was discussed; and Alton submitted a final figure. The Wheelers asked him three separate times if he was satisfied with the amount paid. Alton indicated that he was satisfied, and the Wheelers paid him the agreed upon sum. Alton then signed a lien release. The trial court determined that the Wheelers expected nothing more of Alton.

Whether or not a final payment was offered in settlement and as a release of all claims is a question for the finder of fact. See Pring v. Udall, 95 Colo. 23, 31 P.2d 1113 (1934); McKinney v. Lynch, 619 P.2d 78 (Colo.App.1980). Here, the trial court determined that the final transaction between the parties constituted a release of all claims. There is ample support in the record for this finding.

We affirm.

LEE, J., does not participate.