**LONE STAR STEEL COMPANY,**
**Plaintiff–Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA and its Local Union 9313,**
**Defendants–Appellees.**

No. 86–1475.

United States Court of Appeals,
Tenth Circuit.

July 6, 1988.

See also, 10th Cir., 766 F.2d 1459.

John J. Carwile (Lynn P. Mattson, Doerner, Stuart, Saunders, Daniel & Anderson, with him on the brief), Tulsa, Okl., for plaintiff-appellant.

Earl V. Brown, Jr., Washington, D.C. (Maynard I. Ungerman of Ungerman, Connor & Little, Tulsa, Okl., of counsel, Michael H. Holland, Washington, D.C., with him on the brief), for defendants-appellees.

Before McKAY, MOORE, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an appeal by Lone Star Steel Company from a judgment of the United States District Court for the Eastern District of Oklahoma in favor of the United Mine Workers of America and its Local Union No. 9313, hereinafter referred to as the Union. The proceeding in the district court was a consolidation of an action by Lone Star against the Union for monetary damages pursuant to Section 303 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 187 (1982), and a second action filed several years after the first by Lone Star seeking treble damages from the Union pursuant to the Sherman and Clayton Antitrust Acts, as amended, 15 U.S.C. § 1, *et seq.* (1982).

These consolidated actions have their genesis in a strike by the Union at Lone Star's Starlight Mine near McCurtain, Oklahoma. The strike began in November, 1974. On December 5, 1974, the Union and the Bituminous Coal Operators Association ("BCOA") entered into the National Bituminous Coal Wage Agreement of 1974 ("1974 NBCWA"). Lone Star, however, was not a member of the BCOA, and hence Lone Star and the Union proceeded to negotiate their

own agreement. The Union sought to have Lone Star accept the 1974 NBCWA and in December, 1974, and January, 1975, there were several meetings between the parties concerning the 1974 NBCWA and its various provisions. On January 3, 1975, there was an interim agreement between Lone Star and the Union, and work at the Starlight Mine temporarily resumed on January 8. However, thereafter the parties failed to reach an accord during the so-called "truce period," and the strike resumed on March 8, 1975.

On March 5, 1975, Lone Star filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") challenging the Union's activities and strike at its Starlight Mine. The NLRB filed a petition in the United States District Court for the Eastern District of Oklahoma seeking a temporary injunction against the Union. Following a hearing, the temporary injunction was granted on May 5, 1975. The court found the strike at the Starlight Mine was precipitated by the Union's insistence upon the "Successorship Clause" of the 1974 NBCWA, which clause the court found was probably prohibited by Section 8(e) of the National Labor Relations Act. The court's order did not address the legal status of other clauses of the 1974 NBCWA.

In the interim, on April 11, 1975, Lone Star filed a civil action against the Union seeking damages under the Labor Management Relations Act, 29 U.S.C. § 187. By agreement of the parties, Lone Star's civil suit was held in abeyance pending disposition of the unfair labor charges. Lone Star's unfair labor charges were litigated before an Administrative Law Judge by the Regional Director of the NLRB. The Regional Director, Lone Star and the Union appealed various aspects of the ALJ's decision to the NLRB, which issued its decision in August, 1977, finding in favor of the Union. *United Mine Workers of America*, 231 N.L.R.B. 573 (1977). Lone Star appealed the NLRB's decision to this court, which affirmed in part and reversed in part the NLRB's decision. *Lone Star Steel Company v. NLRB*, 639 F.2d 545 (10th Cir.

1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981).

On February 6, 1979, Lone Star filed a second action against the Union, based on the same underlying facts which were the basis for its earlier action, alleging a violation of the Sherman and Clayton Acts, 15 U.S.C. § 1, *et seq.*, and seeking treble damages. On motion, Lone Star's two actions against the Union were consolidated for trial by the district court. Both parties moved for summary judgment, and both motions were denied on the ground that certain issues of material fact were in dispute.

On March 14, 1984, the district court held an evidentiary hearing, at which time representatives of both Lone Star and the Union testified. The parties also submitted to the district court portions of the transcripts made in the earlier NLRB proceedings before the ALJ and in the 1975 temporary injunction proceeding.

The district court by an order and judgment of February 21, 1986, 691 F.Supp. 1280 (E.D.Okl.1986), found in favor of the Union and against Lone Star, and it is from this judgment that Lone Star appeals.

The district court's order is a detailed sixty-one page memorandum, wherein it found, *inter alia*, that the "Coal Lands" and "Royalty" clauses of the 1974 NBCWA were "objects" of the Union's strike at the Starlight Mine, but that neither clause violated Section 8(e) of the Labor Management Relations Act. The "Successorship" clause of the 1974 NBCWA had also been challenged by Lone Star as one basis for its civil action, but under our decision in *Lone Star*, 639 F.2d 545, the legality of that clause was no longer an issue.

In its order the district court also held that the "Contracting and Subcontracting," "Construction Work" and "Leasing, Subleasing and Licensing Out of Coal Lands" clauses of the 1974 NBCWA were *not* objects of the Union's strike at the Starlight Mine. The district court rejected Lone Star's antitrust claims, holding that Lone Star did not have standing to challenge the Union's activities under those acts. The findings of the district court concerning the

"Leasing, Subleasing and Licensing Out of Coal Lands" (hereinafter "Leasing") provision of the 1974 NBCWA and whether the inclusion of such a provision in an agreement between Lone Star and the Union was an "object" of the Union's strike are attached to this opinion as Attachment A.

On appeal, Lone Star argues that the district court erred in finding that the Leasing clause in the 1974 NBCWA was not an object of the Union's strike at the Starlight Mine. Lone Star does not challenge any other finding in the district court's lengthy order involving other aspects of the strike, including the true "objects" of that strike and the "legality" of those "objects."

Section 303 of the Labor Management Act of 1947 provides that it is unlawful for a labor organization to engage in any activity or conduct defined as an unfair labor practice in 29 U.S.C. § 158(b)(4), and that a person injured by reason of such conduct may sue in any district court of the United States and recover damages caused by such conduct. 29 U.S.C. § 187.

Section 8(b)(4) of the Act provides in pertinent part that it is an unfair labor practice for a labor organization to induce or encourage employees of a person engaged in interstate commerce to strike where *"an object thereof* is forcing or requiring any employer ... to enter into any agreement which is prohibited by subsection (e) of this section." 29 U.S.C. §§ 158(b)(4)(i) and (ii)(A) (1982) (emphasis added).

Section 8(e) of the Act provides in pertinent part as follows:

(e) It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting, or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such agreement shall be to such extent unenforcible and void.

29 U.S.C. § 158(e) (1982)

As above stated, the district court held that the Union struck with the "object" of coercing Lone Star into acceding to an agreement which contained the "Coal Lands" and "Royalty" clauses contained in the 1974 NBCWA, but went on to hold that neither of those clauses violates § 8(e). As indicated, the district court did not have to consider the "Successorship" clause in the 1974 NBCWA, since we had held it to be outside the scope of § 8(e). *Lone Star Steel Co. v. NLRB,* 639 F.2d 545 (10th Cir.1980)[1]. The district court rejected Lone Star's contention that there were other "objects" of the strike, and specifically held that the Leasing clause in the 1974 NBCWA was not an "object" of the strike.[2] Lone Star argues that the district court's finding on that one issue of fact is "clearly erroneous." We do not agree. For this court to disturb that finding of fact concerning the "purpose" and "object" of the strike would inject us into the fact-finding field, which is not within our province.

Fed.R.Civ.P. 52(a) provides that findings of facts by a district court shall not be set aside by an appellate court unless "clearly erroneous." A factual finding is " 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g denied,* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948). In the instant case we do not have a "definite and firm conviction" that the

1. In the proceedings before the NLRB, Lone Star apparently did not claim that the Union was guilty of an unfair labor practice by attempting to coerce Lone Star into an agreement containing a Leasing clause. Rather, in *Lone Star Steel Company v. NLRB, supra,* we were only concerned with the Union's efforts to pressure Lone Star into accepting an agreement which contained a "Successorship" clause and an "Application of Contract" clause.

2. In *United Scenic Artists, Local 829 v. N.L.R.B.,* 762 F.2d 1027, 1032–33 (D.C.Cir.1985), the "object" of a strike was said to be a synonym for the "purpose" of a strike.

district court erred in the finding here challenged.

In *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), the Supreme Court considered the "clearly erroneous" standard mentioned in *United States v. United States Gypsum Co., supra,* and spoke as follows:

This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342 [70 S.Ct. 177, 179, 94 L.Ed.150] (1949); see also *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 [102 S.Ct. 2182, 72 L.Ed.2d 606] (1982).

■ In reaching his finding, the district judge indicated that he was relying primarily on the conduct and statements of the parties made in 1974 and 1975, rather than testimony given ten years later at the hearing on the case, reasoning that what was said and done at the time of the strike had more probative value than that testimony given ten years after the strike. (The district court's comments concerning Lone Star's "changed position" are set forth in Attachment B). Examining the conduct of the parties at the time of the strike, the district court found, as a matter of fact, that the Leasing clause of the 1974 NBCWA was not an issue between Lone Star and the Union, even though there had been limited discussion between the parties concerning that clause; the areas of dispute between Lone Star and the Union were the "Coal Lands," "Royalty" and "Successorship" clauses in the 1974 NBCWA; and the Union struck to coerce Lone Star into acceding to the inclusion in their agreement of those clauses, and not the Leasing clause.[3] The district court's findings in this regard are not, in our view, "clearly erroneous."

In the docketing statement Lone Star identifies the only question for review as follows: "Did the district court err in *finding* that the ... 'Leasing, Subleasing and Licensing' provision[ ] of the 1974 NBCWA [was] not in dispute between Lone Star and the Unions, and [was] not [an] object[ ] of the strike by the Unions, and thus, the Unions did not violate Sections 8(b)(4) and 8(e) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 158(b)(4), 158(e)?" (emphasis added). In its brief Lone Star expands and argues, additionally, that in making its finding that the Leasing clause was not an object of the Union's strike, the district court used the wrong standard "as a matter of law." Lone Star argues that implicit in the order of the district court, which is disclosed by a "close reading" thereof, is a "ranking" by the district court of the "severity" of the several disputes between Lone Star and the Union, and that such gradation is not permitted by the statute. Such is not our reading of the district court's order.

Section 8(b)(4) uses the phrase *"an object thereof ... is to enter into any agreement*

---

3. As indicated, Lone Star apparently did not initially, *i.e.,* in 1975, contend that the Union was guilty of an unfair labor practice in attempting to coerce Lone Star into accepting an agreement which contained the Leasing clause. That particular issue blossomed when the Third Circuit in *Amax Coal Co. v. N.L.R.B.,* 614 F.2d 872 (3d Cir.1980), *rev'd on other grounds,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), held that the "Leasing–Licensing Out" clause violated Section 8(e) of the Act.

prohibited by ...." (emphasis added). However, we do not read the order of the district court as finding that one object, albeit a "minor object," of the Union in striking was to pressure Lone Star into accepting an agreement containing a Leasing provision. Rather, the whole tenor of the district court's order is that although the Union had objects or purposes for its strike, the inclusion of the Leasing clause was not an "object" or "purpose" of the strike nor a matter in dispute between the parties. As above indicated, we are not inclined to disturb that finding.

■ In its opening brief Lone Star's only contentions are that the district court was "clearly erroneous" in finding that the Leasing clause was not in "dispute" between the parties and was neither a "purpose" nor an "object" of the strike, and, alternatively, that in thus finding the district court used the wrong standard. As a variation of its "wrong standard" argument, Lone Star, in its reply brief, appears to argue that whether the Leasing clause was in "dispute" or a "purpose" or "object" of the strike is immaterial, and that it is sufficient if the Union was attempting by its strike to coerce Lone Star into signing an agreement wherein *any* provision thereof was subsequently found to be illegal under Section 8(e), even though the particular section subsequently found to be illegal was never in dispute between the parties. We are not persuaded by this expanded argument. Such was not the basis upon which the case was submitted to, or resolved by, the district court. Ordinarily, a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory. *Stephens Industries, Inc. v. Haskins and Sells*, 438 F.2d 357 (10th Cir.1971). Under these circumstances, we are disinclined to pursue this argument.

Judgment affirmed.

## ATTACHMENT A

. . . .

46. The Court rejects Lone Star's contention that the Article II, Section (h) "Leasing, Subleasing and Licensing Out of Coal Lands" provision was an object of the strike at Starlight. The only indication that Lone Star opposed this provision at the time of the strike appears as a passing reference in Lone Star's March 5, 1975, telegram setting forth its reasons for refusing the Union's proposed addenda to the national agreement. In light of all the evidence, the Court believes that the reference to the provision in the telegram denotes an objection ancillary to and dependent upon Lone Star's basic opposition to the Coal Lands clause. In the telegram Lone Star asserted that by virtue of the Local's refusal to extend the "truce" agreement it did not have sufficient time to ascertain the applicability of the two clauses to companies affiliated with Lone Star. The "Leasing, Subleasing and Licensing Out of Coal Lands" provision, by its express terms, only applies to the "[T]he licensing out of coal mining operations on coal lands owned or held under lease or sublease *by any signatory....*" The only affect [sic] the leasing provision could have on companies affiliated with Lone Star arises from the language of the clause which provides that "[T]he Employers agree that they will not lease, sublease or license out any coal lands, ... where the purpose thereof is to avoid the application of this Agreement or any section, paragraph or clause thereof." Therefore, Lone Star's citation to the provision did not evince opposition to its substantive content, but rather to the language which would prevent Lone Star from circumventing the mandate of the Coal Lands clause. The Court notes that none of the various letters in which Lone Star enumerated the clauses in dispute made mention of the provision. Moreover, the transcripts of the proceedings before Judge Morris and the ALJ contain no evidence showing that the leasing provision was ever discussed, much less disagreed upon, in any of the negotiation sessions. Finally, as noted above, Lone Star cited this provision in its early brief to this Court as a primary, work preservation clause to distinguish it from the alleged secondary, work acquisitive nature of the Successorship and Coal Lands clause. The weight of the evi-

**1244**

dence clearly militates against Lone Star's belated contention that the provision was in dispute at the time of the strike.

### ATTACHMENT B

42. At the initial stages of this litigation Lone Star confined its claims to the Successorship and Coal Lands clauses. When this case was taken out of abeyance in 1980, Lone Star's position regarding the clauses that were at issue prior to the resumption of the strike in March, 1975, changed drastically from what it had been at the time the case was placed in abeyance. On June 27, 1980, Lone Star filed a motion for summary judgment on issues of liability in which it asserted, for the first time in this, or any other litigation, that the Union struck to achieve provisions ... other than the Successorship and Coal Lands clauses. The Court observes that five years prior to the 1980 motion, Lone Star filed a predecessor motion for partial summary judgment on issues of liability in which it alleged the Successorship and Coal Lands clauses as the sole grounds for the Union's liability. Moreover, Lone Star, on page 17 of its 1975 brief (filed just three months after the resumption of the strike), distinguishes the Successorship and Coal Lands clauses from "other provisions in the agreement itself which specifically protect the work of primary employees." [T]he brief then cites three clauses in the 1974 NBCWA which Lone Star, in its 1980 motion, alleged to be illegal Union objectives.... [The clauses Lone Star referred to as primary, work preservation clauses are: 1) Article II, Section (g) "Contracting and Subcontracting"; 2) Article II, Section (h) "Leasing, Subleasing and Licensing Out of Coal Lands"; and 3) Article II, Section (i) "Construction Work".] * ... Finally, the Court takes note of the decision of the Third Circuit in *Amax Coal Co. v. NLRB*, 614 F.2d 872 (3d Cir.1980) in which that court decided that the identical three clauses of the 1974 NBCWA were illegal § 8(e) "hot cargo" provisions. The third Circuit's decision in *Amax* was rendered in February, 1980—four months prior to the filing

of the brief in which Lone Star first attributed the events at Starlight to the Union's insistence upon these clauses.

---

\* The bracketed material is contained in footnote    9 of the district court's order.