**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ROBERT G. McRANN,

    Plaintiff-Counter-Defendant - Appellant,

v.

UNITED INTERNATIONAL HOLDINGS, INC.;
UIH ASIA PACIFIC COMMUNICATIONS, INC.,

    Defendants-Counter-Claimants - Appellees.

UNITED AND PHILLIPS COMMUNICATIONS
B.V.; MOUNTAIN STATES TELEPHONE AND
TELEGRAPH, INC., n/k/a US WEST, INC.,

    Defendants.

No. 01-1411
(D. Colo.)
(D.Ct. No. 98-N-895)

_____

**ORDER AND JUDGMENT**[*]

_____

Richard G. Sander of Bostrom Sands & Sander, P.C., Denver, Colorado, for
Appellant.

Ann B. Frick (N. Reid Neureiter with her on the brief) of Jacobs Chase Frick
Kleinkopf & Kelley LLC, Denver, Colorado, for Appellees.

_____

Before **HENRY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **LUCERO**,

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, _res judicata_ and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Circuit Judge.

Mr. Robert McRann appeals a district court decision dismissing on summary judgment his breach of contract and misrepresentation claims against United International Holdings, Inc. and UIH Asia Pacific Communications, Inc. (collectively "United"). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**Background**

United, through subsidiaries and affiliates, operates subscription television companies. It hired Mr. McRann to serve as managing director of Austar, an Australian subsidiary. Roughly two years after he began working at Austar, Mr. McRann interviewed with United for a management position at another subsidiary, A-2000 Holding NV ("A-2000"). A-2000 is located in Amsterdam, The Netherlands. United offered Mr. McRann the position, and they began negotiating the terms of an A-2000 employment agreement.

Once United offered him the position at A-2000, Mr. McRann began negotiating the termination and buy out of his Austar employment agreement. These negotiations culminated in Mr. McRann signing a release agreement

terminating his Austar employment. Under the release agreement, Mr. McRann released all claims against United "related in any way" to his Austar employment and termination for consideration worth up to $1,162,500. United was to pay the consideration in two separate payments. Mr. McRann received and cashed the first payment of $387,500.[1]

Even after Mr. McRann signed the Austar release agreement, negotiations continued between Mr. McRann and United concerning the terms of his A-2000 employment agreement. Prior to seeing a draft or executing an employment agreement, Mr. McRann moved to Amsterdam and began working at A-2000. Once at A-2000, Mr. McRann expressed "disappointment" over the parties' failure to execute a written employment agreement. He also voiced concerns about the governance and organizational structure of A-2000. Mr. McRann's relationship with the A-2000 managing director deteriorated. About five months after he arrived in Amsterdam, United terminated Mr. McRann's A-2000 employment.

---

[1] We are aware of other proceedings centered around the release agreement. Mr. McRann has filed a claim in the Australian Industrial Relations Commission seeking to "vary[]" the terms of the release agreement. United has filed a complaint in district court, alleging, among other things, breach of the release agreement. At our request, both parties provided a status report. Based on these reports, we conclude neither proceeding affects the determination of this action on appeal.

-3-

Upon his termination from A-2000, Mr. McRann filed a complaint against United in the United States District Court for the District of Colorado.[2]  Mr. McRann asserted in his complaint six state-law claims related to his termination: (1) breach of express or implied contract; (2) fraudulent and/or negligent misrepresentation; (3) unjust enrichment; (4) civil conspiracy; (5) promissory estoppel; and (6) interference with contract or prospective contractual relation. United answered and moved for summary judgment.  Exercising its diversity jurisdiction, the district court dismissed on summary judgment all but the claims for civil conspiracy and promissory estoppel.  At a status conference, the district court struck Mr. McRann's demand for a jury trial and dismissed the civil conspiracy claim.  Mr. McRann voluntarily dismissed the remaining claim of promissory estoppel.  This appeal followed.  We affirm.[3]

---

[2]  The complaint also named as defendants United & Philips Communications B.V. and Mountain States Telephone & Telegraph, Inc.  Mountain States Telephone & Telegraph is now known as US West, Inc., and we will refer to it as "US West" throughout the remainder of this order and judgment.  On Mr. McRann's motion, the district court dismissed US West as a defendant.  In addition, Mr. McRann states in his opening brief United & Philips Communications B.V. is "not a party to this action" because it "was never served."

[3]  In addition to the arguments discussed below, Mr. McRann presents other arguments contingent upon us reversing the district court on his breach of contract and/or misrepresentation claim.  We do not address these arguments because we affirm the district court's dismissal of this claim.

**Standard of Review**

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1313 (10th Cir. 1999) (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Clinger v. N. M. Highlands Univ.*, *Bd. of Regents*, 215 F.3d 1162, 1165 (10th Cir. 2000) (citation omitted), *cert. denied*, 531 U.S. 1145 (2001). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Simms v. Oklahoma ex. rel., Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 528 U.S. 815 (1999).

**Breach of Contract**

Mr. McRann argues the district court erred in granting summary judgement to United on his breach of express or implied contract claim because "[t]here are triable issues of material fact as to whether the parties reached an agreement as to the terms of [Mr.] McRann's employment at A-2000." The district court held "a reasonable jury could not find that the parties[] ever reached an agreement as to the essential terms of [Mr.] McRann's alleged employment agreement." We agree with the district court.

"In order to establish the existence of a contract, the parties must understand and agree to all the essential terms [of the alleged contract]." *Federal Lumber Co. v. Wheeler*, 643 P.2d 31, 36 (Colo. 1981) (citations omitted). The parties' agreement upon the essential terms of the alleged contract "is evidenced by their manifestations of mutual assent." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) (citation omitted). There is no binding agreement "if it appears that further negotiations are required to work out important and essential terms." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. Ct. App. 2001) (citing *Am. Mining Co. v. Himrod-Kimball Mines Co.*, 235 P.2d 804, 808 (Colo. 1951)).

Mr. McRann maintains he reached agreement with United on his A-2000

employment agreement during a video conference call. During this call, Mr. Mark Schneider, an employee of United, discussed with Mr. McRann the terms of the employment agreement. Mr. Schneider allegedly assured Mr. McRann "[t]he contract will be almost identical to your contract in Australia, and we are going to make you whole on this contract." Mr. McRann argues these statements represent "the parties' mutual agreement as to the essential terms and the form of [the] agreement." Mr. McRann claims he memorialized this alleged agreement in a "term sheet" upon Mr. Schneider's request.[4]

Mr. McRann does not present facts allowing a reasonable jury to reach his conclusions. Mr. Schneider's statement that United would "make [Mr. McRann] whole" could perhaps, in a different context, provide an inference of a contract. We, however, are bound to view statements in the factual context in which they

---

[4] In his opening brief, Mr. McRann stated "[t]he evidence clearly supports a finding that the parties reached a meeting of the minds during the June 10, 1997 teleconference. The evidence further supports a finding that [Mr.] McRann's Term Sheet ... was intended to memorialize the terms of that agreement." However, in his reply brief, Mr. McRann retreats from the position that the parties formed a contract at the teleconference. Instead, he argues the parties "agreed upon key economic terms of employment" at the teleconference and the rest of the details were resolved "[o]ver the next several days." We need not respond to this argument raised for the first time in the reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Even if we were to consider the new argument, Mr. McRann's reply brief does not provide any additional evidence suggesting he and United agreed to a contract at any time prior to his creating the "term sheet."

were made. *See Estate of Hocker v. Walsh*, 22 F.3d 995, 999 (10th Cir. 1994). Here, the undisputed evidence shows, in describing the video conference call, Mr. McRann wrote a letter to Ms. Margaret Houlihan, another employee of United, stating, "we are close to finalizing an employment contract," but there are "remaining issues." A few days later, Mr. McRann wrote a letter to Mr. Schneider stating, "I think we are close to an agreement pending further discussion/resolution on two key issues plus two small ones." In addition, the title of the "term sheet" indicates it was only a "Draft of Proposed Employment terms." In a memorandum attached to the "term sheet", Mr. McRann acknowledged the proposed terms were subject to United's agreement: "I agree to the terms attached and ... I think they should be contained in a new employment letter agreement. If you agree, please have it faxed to my home number." The only reasonable inference from this evidence is the parties intended further negotiation; they had not entered a contract.

Less than a month after the video conference call, Mr. McRann signed the release agreement terminating his Austar employment agreement. Mr. McRann argues his signing of the release agreement demonstrates the parties had previously agreed on the terms of his A-2000 employment. He claims he would not have signed the release agreement "if he had not firmly believed that he and

[United] had made a binding contract with respect to A-2000." We will not speculate on the subjective reasons Mr. McRann signed the release agreement. The subjective and unexpressed intent of Mr. McRann is irrelevant to the issue of whether he and United reached a binding agreement on the terms of his A-2000 employment. *See Avemco Ins. Co. v. N. Colorado Air Charter, Inc.*, 38 P.3d 555, 559 (Colo. 2002); *Therrien v. United Air Lines, Inc.*, 670 F. Supp. 1517, 1523 (D. Colo. 1987). Rather, Mr. McRann must present evidence allowing at least a reasonable inference the parties' objective manifestations of assent indicate an agreement was reached. *See Avemco Ins. Co.*, 38 P.3d at 559; *I.M.A., Inc.*, 713 P.2d at 888. This he did not do.

Mr. McRann argues three incidents provide an inference United agreed to the essential terms of the contract at the teleconference. First, he believes an e-mail Ms. Houlihan sent him demonstrates Mr. Schneider had accepted "the content of the Term Sheet and expected [Ms.] Houlihan to use it as the basis for the final written contract." Ms. Houlihan, who apparently had responsibility for drafting the employment agreement, wrote an e-mail to Mr. McRann stating: "Mark Schneider suggested that I obtain the term sheet and long incentive formula from you directly, as he is travelling [sic]." Ms. Houlihan also wrote she "look[ed] forward to speaking with [Mr. McRann] regarding the contract and

-9-

formula for the long term incentive." These statements, taken together, do not support an inference that United had already accepted the terms set forth in the "term sheet." Instead, this e-mail seems to indicate Ms. Houlihan anticipated further discussion with Mr. McRann about the employment agreement.

Mr. McRann also believes we can infer the "term sheet" was an accurate memorialization of an already formed contract from the fact United presented a facsimile of the "term sheet" to US West, a part-owner of A-2000, "for approval, which approval was given."We disagree. After reviewing the "term sheet," a representative from US West replied, "[i]n general the terms proposed are good and consistent with our discussions." The representative instructed Ms. Houlihan on what bonus or incentive payments she should include in the employment agreement. The representative also inquired whether a minimum bonus had been discussed. This communication does not demonstrate Mr. McRann had already secured an A-2000 employment agreement. Although it does demonstrate US West thought the "proposed" terms were "consistent" with terms previously discussed, this communication, much like the e-mail described above, demonstrates the parties anticipated further discussion about the employment terms.

Finally, Mr. McRann believes a telephone conversation with Ms. Houlihan a few weeks after the above e-mail was sent indicates the parties had agreed to the terms of a contract at the teleconference. Mr. McRann testified:

> I also called Maggie Houlihan two or three days before I left for Amsterdam, and I was extremely concerned because I had not received a copy of the contract, and she told me, "Bob, don't worry about it. The contract is finished and complete. We only need one more sign-off in Denver. That person is not here. As soon as that person gets back, we'll get the stamp of approval, and when you get to ... Amsterdam, that document will be waiting for you at the hotel for you to review.'"

Mr. McRann maintains Ms. Houlihan's alleged statement the employment agreement was "finished and complete" indicated the contract had already been formed and "did not need additional approval." We disagree. The statement indicates at most the initial draft of the employment agreement was "finished and complete." The agreement was still subject to "one more sign-off," and Mr. McRann's "review." In fact, Mr. McRann testified Ms. Houlihan could not fax a copy of the agreement to him before he left for Amsterdam "because she hadn't received the final signature approval on the document." Consequently, we cannot reasonably infer from this correspondence that the parties previously reached an agreement upon the terms of a contract.[5]

---

[5] Mr. McRann argues in his reply brief two additional facts provide "compelling proof that [Mr.] McRann and [United] had a deal." First, United issued a press release announcing Mr. McRann's resignation from Austar. Second, Ms. Houlihan sent a memorandum to the chief executive of A-2000 confirming that Mr. McRann "accepted

After reviewing the evidence, we agree with the district court Mr. McRann failed to present facts allowing a reasonable jury to conclude the parties formed a contract.[6] We therefore affirm the district court's grant of summary judgment on the breach of express or implied contract claim.

**Fraudulent and/or Negligent Misrepresentation**

Mr. McRann also insists the district court erred in granting summary judgment on his fraudulent and/or negligent misrepresentation claim. In doing so, Mr. McRann does not rely on the misrepresentation claim argued before the district court; he relies on a new misrepresentation claim pieced together on

---

the position of COO for A2000." As discussed earlier, we need not respond to arguments raised for the first time in the reply brief. *See Stump*, 211 F.3d at 533. Even so, this particular argument would fail if we were to consider it. Under the circumstances of this case, Mr. McRann's departure from Austar and his so-called acceptance of the position at A-2000 did not create a legally enforceable agreement because the evidence indicates the parties had yet to agree upon the essential terms of Mr. McRann's A-2000 employment. *See Fed. Lumber Co.*, 643 P.2d at 36.

[6] The district court also concluded "[t]he events which occurred once [Mr.] McRann was in Amsterdam further convince me that the evidence conclusively demonstrates that the parties were in the process of coming to a deal, rather than having reached a deal." Mr. McRann argues the district court reached this conclusion by "improperly draw[ing] inferences favorable to defendants." He believes "the events in Amsterdam are not relevant to whether [he] and [United] reached a 'meeting of the minds' in Australia." We need not decide whether the events in Amsterdam are damaging to Mr. McRann's case or simply irrelevant, because in either case, the evidence fails to suggest Mr. McRann and United entered a contract.

-12-

appeal from the rubble of the old.  This he cannot do.  *See Lone Star Steel Co. v. United Mine Workers*, 851 F.2d 1239, 1243 (10th Cir. 1988).  Absent certain exceptions not present here, "we have consistently refused invitations to consider new issues on appeal." *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993).  We have repeatedly held "a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory." *Id*. (citations omitted).  An issue may be appealed only if it is "presented to, considered [and] decided by the trial court." *Cavic v. Pioneer Astro Indus., Inc.*, 825 F.2d 1421, 1425 (10th Cir. 1987) (quotation marks and citations omitted).

Mr. McRann maintains he alleged a "two-prong fraud/negligent misrepresentation claim" before the district court:  one prong based upon misrepresentations inducing him to sign the Austar release agreement, and one prong based upon misrepresentations inducing him to accept employment with A-2000.  In other words, Mr. McRann maintains he alleged an "Austar misrepresentation claim" and an "A-2000 misrepresentation claim."  He appeals the district court's decision as it relates only to the A-2000 misrepresentation claim.  The A-2000 misrepresentation claim, however, was not "submitted to, or resolved by, the district court." *Lone Star Steel Co.*, 851 F.2d at 1243.  Before the district court, Mr. McRann consistently argued he relied on various

misrepresentations about the A-2000 position by leaving his employment at Austar and signing the Austar release agreement. The district court rejected this argument and granted summary judgment, holding Mr. McRann ratified the release agreement and failed to tender-back a severance payment made under the release agreement. Mr. McRann did not mention any other misrepresentation claim. In short, Mr. McRann did not argue before the district court fraudulent or negligent misrepresentations induced him to accept employment with A-2000.

Mr. McRann argues his complaint indicates he alleged a separate claim based solely on misrepresentations concerning his A-2000 employment. For example, one cause of action in the complaint states Mr. McRann relied on various misrepresentations by signing the release agreement *and* "moving to Amsterdam and assuming duties there ... for A-2000." The same cause of action states he was damaged by foregoing compensation due him pursuant to his Austar employment agreement "*and/or* his A-2000 Employment Agreement and moving to Amsterdam without a signed employment agreement."

We conclude Mr. McRann did not allege two independent misrepresentation claims for three reasons. First, "vague, arguable references to [a] point in the district court proceedings do not ... preserve the issue on appeal." *Lyons*, 994

F.2d at 722 (citation and quotation marks omitted). Second, a claim alleging fraud must be pled "with particularity." Fed. R. Civ. P. 9(b). Mr. McRann specifically identified only one claim in his complaint involving fraud. He did not indicate the existence of a separate claim involving fraudulent misrepresentations inducing him to accept employment with A-2000. Third, the language identified by Mr. McRann suggests at most the scope of his fraudulent and/or negligent misrepresentation claim may have been slightly broader in the complaint than the scope of his misrepresentation claim articulated in subsequent pleadings. If this is what occurred, Mr. McRann abandoned this broader reading of his misrepresentation claim by consistently arguing in subsequent pleadings the Austar release agreement was not "effective" or "valid" because he was "fraudulently induced" to sign it. *See Lyons*, 994 F.2d at 722 (citations omitted). Mr. McRann did not argue fraudulent or negligent misrepresentations induced him to accept employment with A-2000. Nor did he claim as damages the value of his alleged A-2000 employment agreement.[7]

---

[7] Mr. McRann did present an expert report on what his A-2000 compensation and benefits would have been if United had not allegedly reneged on the employment agreement "contemplated by the parties." This information, however, was presented in support of Mr. McRann's breach of contract claim. It was not used to support a claim involving misrepresentations inducing Mr. McRann to accept employment at A-2000.

Mr. McRann also maintains he discussed a separate misrepresentation claim in his brief opposing United's motion for summary judgment. In one paragraph nestled in the statement of undisputed facts, Mr. McRann alleged United "representatives fraudulently misrepresented material facts that [he] relied upon and if known before he made his decision to accept the A-2000 position, would have caused him to remain in Australia." This language does not support a separate claim based on misrepresentations concerning the A-2000 position. Instead, this language, when read together with the rest of the brief, is consistent with Mr. McRann's argument he relied on misrepresentations concerning the A-2000 position by leaving his employment at Austar and signing the Austar release agreement. In fact, Mr. McRann later referenced this language in the brief as supporting his contention the Austar release was not "effective ... because it was fraudulently induced."

Mr. McRann also argues he did not address the A-2000 misrepresentation claim because United's summary judgment motion was directed only to the misrepresentation claim "concerning Austar and the compensation and release agreement." This argument fails. United's memorandum in support of its motion for summary judgment makes it clear it sought summary judgment on all of the claims Mr. McRann brought against United. Furthermore, the language in

United's memorandum tracks the argument in Mr. McRann's complaint: "[Mr.] McRann claims that [United] either fraudulently or negligently misrepresented the terms of his A-2000 employment contract, causing him to terminate his Australia contract and move to Amsterdam instead of continuing to work for AUSTAR. Based on the undisputed facts, these claims fail as a matter of law." United went on to argue the Austar release agreement waived Mr. McRann's claims of fraud or negligent misrepresentation. Mr. McRann responded by arguing, among other things, the release only applied to contract-based claims. Mr. McRann never mentioned the existence of another misrepresentation claim; he responded as if he had only one misrepresentation claim. Mr. McRann cannot shift responsibility for his conduct on United's failure to contest a claim he did not allege in his complaint or raise in response to United's summary judgment motion.

In sum, Mr. McRann may not assert a new and different misrepresentation claim on appeal.[8] As he does not appeal the district court's decision concerning the misrepresentation claim actually presented to the district court, we affirm the district court's grant of summary judgment on the fraudulent and/or negligent

---

[8] Consequently, we reject Mr. McRann's remaining arguments dependent upon our making a determination he alleged a separate misrepresentation claim before the district court. He did not.

misrepresentation claim.

**Conclusion**

Mr. McRann's and United's motions to supplement the record on appeal are granted. Mr. McRann's motion to strike United's status report is denied. For the reasons stated above, the decision of the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge