Louis DIFRANCESCO, d/b/a Particle Interconnect Research & Development, Inc., Defendant and Third–Party Plaintiff–Appellant,

v.

PARTICLE INTERCONNECT CORPORATION and Nanopierce Technologies, Inc., Plaintiffs–Appellees,

and

Intercell Corporation and Paul H. Metzinger, Third–Party Defendants–Appellees.

No. 00CA0601.

Colorado Court of Appeals, Div. IV.

Dec. 6, 2001.

Hale Hackstaff Tymkovich & ErkenBrack, L.L.P, Richard W. Daily, Allan L. Hale, Scott A. Hyman, Denver, CO, for Defendant and Third–Party Plaintiff–Appellant.

Caplan and Earnest, L.L.C., Peter M. Hamilton, Colleen A. O'Laughlin, Denver, CO, for Plaintiffs–Appellees and Third–Party Defendant–Appellee Intercell Corporation.

Kirk Holleyman, P.C., Kirk B. Holleyman, Denver, CO, for Third–Party Defendant–Appellee Paul H. Metzinger.

Opinion by Judge DAVIDSON.

Defendant, Louis DiFrancesco, d/b/a Particle Interconnect Research and Development, Inc., appeals from the judgment enforcing a settlement of his patent dispute with Particle Interconnect Corporation (PIC), Nanopierce Technologies, Inc. (NTI), Intercell Corporation, and Paul Metzinger (collectively, plaintiffs). We reverse and remand.

This lawsuit concerns technology patented by defendant. In 1996, defendant merged his wholly-owned company with PIC, assigned his patents to the latter entity, and entered into a one-year consulting agreement. NTI is the successor in interest to PIC.

After defendant's consulting position was terminated, PIC and NTI filed this lawsuit, alleging that defendant continued to represent that he owned the patents and to improperly use the name Particle Interconnect. Defendant filed counterclaims against PIC and NTI and third-party claims against Intercell Corporation, the parent corporation of PIC and NTI, and Paul Metzinger, defendant's former attorney who had facilitated the merger and who is an officer of one or more of the other entities in this lawsuit. Defendant alleged, inter alia, breach of the merger agreement and legal malpractice.

According to a deposition transcript submitted by plaintiffs, during a break in defendant's pretrial deposition, the parties discussed settlement and then placed the substance of their discussions on the record. The transcript indicates that written documents would subsequently be prepared. However, later, when drafts were exchanged, the parties could not agree on terms.

Plaintiffs then filed a motion with the trial court, alleging that the deposition transcript reflected a completed settlement agreement. Plaintiffs asked the court to enforce the settlement agreement and to dismiss all claims and counterclaims. Plaintiffs also submitted a lengthy proposed order, which, according to plaintiffs, reflected the terms of the settlement reached during defendant's deposition. One of the terms in the proposed order granted defendant a license to use certain patented technology. The trial court, presumably finding that a settlement had been reached, entered plaintiffs' proposed order as a judgment.

Defendant appeals, arguing that the trial court erred in its determination that a settlement agreement was reached and, alternatively, that the judgment entered by the trial court omitted or inaccurately reflected terms set forth in the deposition transcript. We agree and therefore reverse.

I.

■ As a threshold matter, we address and reject plaintiffs' contention that defendant waived his right to appeal the judgment enforcing the settlement agreement.

While defendant's appeal was pending, plaintiffs filed a motion to dismiss with this court, arguing that defendant waived or mooted his right to appeal because he had accepted the benefits of the trial court's judgment. On plaintiffs' motion for leave to file supplemental factual materials regarding events since the filing of the appeal, the case was remanded to the trial court to determine whether, based on these factual allegations, defendant had waived his right to appeal.

On remand, the record before the trial court consisted of the parties' briefs and

attached exhibits, which contained two messages posted by defendant. These messages were posted on the NTI bulletin board on a stock market watch website hosted by a well-known search engine portal. The first message, which was posted after the initial appeal was filed, stated:

> Hello, I am Louis DiFrancesco. I have a license to produce product. I am trying to get my company to be listed on the Penny Stock over the counter StockMarket. I would appreciate any suggestions that would accomplish that end. You fellow shareholders of Intercell, may want to invest in this new company. [sic]

The second message was posted after the remand order and appears to be an excerpt from a draft of defendant's remand brief. It referenced the earlier posting and stated, in part: "Since the judgment appealed from has not been stayed, Appellant does have the license awarded him under its provisions."

The trial court issued an order stating, in its entirety, "The court rules that DiFrancesco has waived his right to appeal."

In their motion to dismiss filed here, plaintiffs argue that, by advertising that he had a license, seeking financial support, and acknowledging that the license in question was that awarded in the judgment, defendant voluntarily accepted the benefits of the trial court judgment granting him a license and, thereby, waived his right to appeal. Defendant argues, as he did in the trial court, that even if benefits of a patent license can be accepted before the licensed technology is used in production, his claim was not inconsistent with the appeal because he also held another license, cancelled by the trial court's judgment, that would be valid if the settlement were set aside.

It is not clear from the trial court's order on remand if, or how, it resolved the factual disputes presented to it. However, even if it determined all factual questions against defendant, i.e., that defendant was referring to the license awarded him in the judgment, was using the license to solicit investors, and did not have any other valid licenses, we disagree that defendant has accepted the benefits of the judgment being appealed.

Accepting an award or legal advantage under a judgment generally waives a party's right to appeal that judgment when the appeal may result in a determination that the party is not entitled to what has been accepted. *Potter v. State Farm Mut. Auto. Ins. Co.,* 21 P.3d 874 (Colo.App.2001). *See also Farmers Elevator Co. v. First Nat'l Bank,* 181 Colo. 231, 508 P.2d 1261 (1973)(acceptance of attorney fees under the judgment rendered the appeal moot); *Wilson v. Auto. Owners Ass'n Ins. Co.,* 152 Colo. 431, 382 P.2d 815 (1963)(by voluntarily accepting money awarded in the judgment, the plaintiff is estopped from claiming any right to appeal). *Cf. Main Elec., Ltd. v. Printz Servs. Corp.,* 980 P.2d 522 (Colo.1999)(to render an appeal moot, acceptance of benefits under a judgment must be attended by circumstances indicating an intention by both parties to settle and compromise the disputed claim). The party asserting waiver under this rule must demonstrate that the appealing party has actually received a benefit under the judgment and that resolution of the appeal may result in removing the appealing party's entitlement to the benefit received. *First Nat'l Bank v. Theos,* 794 P.2d 1055 (Colo.App. 1990).

The question to be answered here is whether defendant has actually received any benefit under the judgment. In the majority of cases that discuss this issue, the party had received cash or tangible property in satisfaction of the judgment, and there was no question that a benefit had been received. *See, e.g., Wilson v. Auto. Owners Ass'n Ins. Co., supra.* The only Colorado case determining that no benefit had been received is *First National Bank v. Theos, supra.* There, a division of this court held that no benefit had been received where the appellant's motion to appoint a receiver had been granted, but no money or property had been conveyed, no execution on the judgment issued, and both sides had obtained stays of execution.

The courts of some states have adopted a rule that prevents an appeal if the party takes any action inconsistent with the right of review. These jurisdictions treat such inconsistent behavior as a tacit acceptance of

the benefits of the judgment. *See, e.g., J & F Car Care Serv., Inc. v. Russell Corp.,* 166 Ga.App. 888, 305 S.E.2d 504 (1983)("As a general rule, any voluntary act by a party, with knowledge of the facts, by which he expressly or impliedly recognizes the validity and correctness of a judgment against him, will operate as a waiver of his right to bring error to reverse it, as where he receives affirmative relief under the judgment or takes a position inconsistent with his right of review."); *Allen v. Allen,* 198 Ga. 267, 31 S.E.2d 481 (1944)(appointment of receiver waived right of appeal).

Most courts that have considered the issue, however, deny an appeal only when the party has received some benefit of tangible value under the judgment; actions that are merely inconsistent with the appeal are not sufficient to support a finding of waiver. *See, e.g., Robert L. Wheeler, Inc. v. Scott,* 818 P.2d 475 (Okla.1991). *See also Menges v. Robinson,* 132 Cal.App. 647, 23 P.2d 526 (1933)(recordation of judgment lien resulted in only speculative benefit depending on opposing party's future acquisition of property in the county and did not constitute acceptance of benefits). The latter view is more consistent with the language in *Theos,* "reversal of the judgment on appeal will not affect the Bank's entitlement to a benefit that it *actually received* under the judgment," *First National Bank v. Theos, supra,* 794 P.2d at 1058 (emphasis added), and we find it persuasive.

Here, we conclude that defendant's statements did not result in his receipt of a tangible benefit under the judgment. It is undisputed that defendant has not used plaintiffs' technology to manufacture any products and therefore has not exercised any rights granted under the license for which compensation would be owed to plaintiffs. Nor have plaintiffs demonstrated that defendant accepted or received any other thing of value. Thus, when defendant's appeal is successful and the judgment enforcing the settlement agreement is reversed, although defendant will not have the license granted under that judgment, still his actions will not have resulted in anything of value that must be returned. Accordingly, defendant did not waive his right to bring this appeal.

## II.

As to the merits of the appeal, defendant contends that the trial court erred in determining that an enforceable settlement agreement had been reached at the deposition. Specifically, defendant asserts that any agreement was preliminary and conditioned on preparation of a formal written document. Defendant also contends that the parties had not agreed on all material terms. We agree with both contentions.

A settlement agreement is a contract to end judicial proceedings. *Recreational Dev. Co. v. Am. Constr. Co.,* 749 P.2d 1002 (Colo.App.1987). The existence of a settlement agreement, like any contract, is generally a question of fact. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986). A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. *Goltl v. Cummings,* 152 Colo. 57, 380 P.2d 556 (1963). If, however, the terms or existence of the settlement are in dispute, an evidentiary hearing is required. *See City & County of Denver v. Adolph Coors Co.,* 813 F.Supp. 1476 (D.Colo. 1993).

Here, the judgment does not contain findings of fact or a statement of the applicable standard. However, in the trial court, the parties relied solely on the transcript memorializing the settlement discussions, and their dispute was centered not on underlying facts, but on the conclusions to be drawn from that document. Thus, although the fact of a settlement was disputed, the trial court's ruling necessarily was based on its interpretation of the written transcript, which is a question of law subject here to de novo review. *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200 (Colo. 2000).

### A.

The transcript summarizing the settlement discussions begins with the following statement by the attorney for PIC, NTI, and Intercell Corporation:

[T]he parties have met today at length, and we believe that we have a settlement agreement, the material terms of which I will set forth following this, with the idea that it is subject to preparation of final settlement documentation within a period of two weeks from today's date to effect a final settlement and release of all actions between these parties. If within that two-week period it is determined that final settlement documentation cannot be achieved but substantial progress is being made, the parties will agree to continue work towards documentation. In the extraordinarily unlikely event that there is not agreement on these material terms as I'm setting forth today, the parties also agree that they will make a joint motion to the Court to extend the trial date by a period of time roughly equivalent to that which was not spent in litigation because we will also agree to a stay while these settlement documents are being prepared.

A writing is not necessary to create a binding settlement agreement. *South Carolina Ins. Co. v. Fisher*, 698 P.2d 1369 (Colo.App.1984). The fact that parties contemplate preparing a written agreement does not necessarily render a verbal agreement invalid, *see I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra*, nor does the fact that parties agree to stay proceedings rather than immediately dismiss them. *Goltl v. Cummings, supra*. However, when a verbal understanding is, as here, expressly made "subject to" preparation of a written document, it is reasonable to infer that the parties have not yet agreed to be bound. *Cf. Burgess Constr. Co. v. M. Morrin & Son Co.*, 526 F.2d 108, 113 (10th Cir.1975)("The words 'subject to' usually indicate a condition to one party's duty of performance and not a promise by the other.").

Also, there can be no binding contract if it appears that further negotiations are required to work out important and essential terms. *Am. Mining Co. v. Himrod–Kimball Mines Co.*, 124 Colo. 186, 235 P.2d 804 (1951). *See also Applebaugh v. Hohl*, 535 P.2d 222 (Colo.App.1975)(not selected for official publication). Agreements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement. *Griffin v. Griffin*, 699 P.2d 407 (Colo.1985).

Here, according to the deposition transcript, the attorney for PIC, NTI, and Intercell explicitly acknowledged that final agreement on terms may not have occurred: "In the extraordinarily unlikely event that there is not agreement on these material terms as I'm setting forth today...." The attorney for Metzinger also indicated that the entire agreement was not worked out:

It's also my understanding the parties are instructing and authorizing the attorneys to prepare settlement documents that would implement these terms that we've talked about and also flush [sic] out the details on the issues we have discussed, and that the parties, all of them here agree to act in good faith to try to consummate this transaction as soon as is reasonably possible under the circumstances.

We agree with defendant that these statements plainly indicate that any agreement was not binding and that the parties would have to agree to final written terms before being bound.

### B.

Parties must agree on all material terms to create a valid settlement agreement. *Fed. Lumber Co. v. Wheeler*, 643 P.2d 31 (Colo.1981). An agreement cannot be enforced unless the terms are sufficiently definite to allow a court to determine whether the parties have complied with them. *Stice v. Peterson*, 144 Colo. 219, 355 P.2d 948 (1960); *Mestas v. Martini*, 113 Colo. 108, 155 P.2d 161 (1944). While parties may definitely agree on some issues, the absence of agreement on other material issues prevents the formation of a binding contract. *Am. Mining Co. v. Himrod–Kimball Mines Co., supra*.

Defendant argues that the parties did not reach agreement on several material terms: the scope of the license (which sockets would be covered), plaintiffs' noninterference with licensees, defendant's right to personally contact licensees, and the royalty rate for the license. We agree.

Plaintiffs concede that specific details were not identified as to the scope of the license and plaintiffs' noninterference with licensees. They contend, however, that the parties agreed to "flush [sic] out the details." They argue that this meant they would reduce those terms to writing, not that no agreement had been reached. They do not, however, offer any agreed upon definition of these terms.

Moreover, the deposition transcript contains the following inconclusive exchange on the subject of the scope of the license:

[Plaintiffs' attorney]: License product shall be defined for purposes of his license as packaged component sockets for all customers ...

[Defendant]: Pete, you have made a mistake on exactly which sockets. We also had a die package there. It was sockets, not just packaged. It was sockets.

[Plaintiffs' attorney]: Okay. The correction that's been noticed is die packaged sockets as well?

[Defendant]: The term "all sockets."

[Plaintiffs' attorney]: All sockets?

[Defendant]: All sockets.

[Plaintiffs' attorney]: And that is subject to the final definitions that I understand [defendant] and Dr. Neuhaus will be able to reach definitionally. I appreciate that clarification.

Similarly, defendant's attorney made the following comment during the settlement discussions concerning the noninterference clause:

It has been agreed by the parties that the patentholder and any of its affiliated companies, as well as the principals, and so forth and so on—we will come up with precise wording to cover all the bases—will not interfere with the licenses that have been issued, and there will be enforcement provisions with respect to that noninterference. Specifically, we discussed to the extent that licenses to those particular licensees may be reissued and the terms under which that may occur, and I think we need to have some further discussions with respect to that issue. We can either do it now or in the coming days. But that is the

noninterference provisions with respect to the preexisting licenses. When I say "preexisting licenses," I'm talking about those as of September 3, 1996 which are a very important and material element to the settlement.

However, there is nothing in the deposition transcript that indicates that the parties reached agreement on either the scope of the license or the content of the noninterference clause.

The transcript of the settlement discussions also reflects disagreement on the extent of defendant's allowable contact with licensees. The following exchange occurred between the attorney for Metzinger and defendant's attorney:

[Metzinger's attorney]: It's my understanding that [defendant's] contact with any of the existing licensees will be limited to the collection of royalties and not to anything else ...

[Defendant's attorney]: I don't think we discussed that at all.... And we're not agreeing that [defendant] is going to limit his contact with the licensees. That in and of itself I think is entirely a separate issue, and I don't think it's been the subject of these negotiations.

On the issue of royalties, plaintiffs assert that the royalty rate for defendant's license was fully defined in the transcript as a $25,000 minimum royalty based on royalties from actual application of the technology. However, the transcript's reference to the $25,000 minimum does not specify how the rate is to be calculated. While the transcript does state that the license will be granted "generally on terms and conditions substantially similar to the licenses that we have been referring to as the outstanding or existing licenses," there were several outstanding licenses, each containing different royalty calculations. No method of reaching specific royalty terms was identified.

The lack of agreement demonstrated in the transcript is also reflected in plaintiffs' proposed order and the resulting judgment. The judgment contains new and different terms from those in the transcript and omits certain terms, and plaintiffs have not demon-

strated that subsequent agreement had been reached on those issues.

As to the scope of the license, the judgment describes "all sockets for all customers (except for sockets used in the automated handling and testing of integrated circuits)." Plaintiffs do not explain the origin of the parenthetical language. Regarding the non-interference clause, the judgment states only that plaintiffs are restrained from "materially interfering" with defendant's right to collect royalties, but it does not contain conditions under which the licenses may be reissued or enforcement provisions as discussed in the transcript. On the subject of contact with licensees, the judgment provides that "any and all contacts with licensees ... shall be made exclusively through independent legal counsel and not by [defendant], personally." This term was specifically not agreed to in the transcript. Regarding royalties, the judgment contains the same general statement that terms will be similar to existing licenses but does not explain how specific terms will be arrived at in light of the different terms in each of the existing licenses. The judgment also declares that plaintiffs own all right to patent improvements, which was a term not discussed in the transcript.

We conclude, as a matter of law, that the transcript of the settlement discussions indicates that the parties failed to reach agreement on all material issues. For that reason, the trial court erred in finding that a settlement had been reached.

The judgment is reversed, and the case is remanded to the trial court for trial or other proceedings not inconsistent with this opinion.

Judge RULAND and Judge DAILEY concur.