23CA1907 McCarthy v Kent 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1907
El Paso County District Court No. 22CV31128
Honorable Thomas K. Kane, Judge

Kevin McCarthy,

Plaintiff-Appellee,

v.

Marcus Kent,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Tow and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Robinson & Henry, P.C., Alexander C. Lowe, Denver, Colorado, for Plaintiff-Appellee

Baker Law Group, LLC, Andrew C. Lang, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1 Defendant, Marcus Kent, appeals the trial court's judgment enforcing a memorandum of understanding that he and plaintiff, Kevin McCarthy, entered following a mediation. We affirm.

## I. Background

¶ 2 McCarthy loaned Kent $35,000, which Kent was to repay, with interest, pursuant to an unsecured promissory note. A few months later, McCarthy loaned Kent an additional $25,000, which Kent was to repay, with interest, pursuant to another unsecured promissory note. Under the terms of the two notes, Kent was to repay McCarthy a total of $66,000, including $6,000 in interest.

¶ 3 According to McCarthy, Kent paid the $6,000 due in interest on the two notes but failed to repay the $60,000 principal amount. McCarthy filed the underlying complaint against Kent, asserting two claims for breach of contract (one for each note), as well as claims for civil theft, unjust enrichment, and promissory estoppel.

¶ 4 In March 2023, the parties participated in mediation and reached an agreement to settle all claims. They both signed a memorandum of understanding (MOU) that provides the following:

> Parties agree to settle on the total negotiated amount of $30,000 over 60 months ($500/month). Payments shall be paid via

electronic transfer, with the first payment due to [McCarthy] on May 1, 2023. Thereafter, monthly payments shall be made by [Kent] on or before the 15th day of each month until paid in full. If more than three consecutive monthly payments are missed within 91 days, a Confession of Judgment for $60,000 shall enter secured by a Deed of Trust on [Kent's] rental property located [in Alabama].

¶ 5 The parties thereafter filed a joint notice of settlement informing the court that they'd "agreed in principle to settle all claims during mediation." The notice explained that they were "finalizing the settlement documents" and that McCarthy would file a motion to dismiss with prejudice "as soon as possible once all settlement documents are properly signed."

¶ 6 Over the next few months, the parties' attorneys tried, without success, to finalize the settlement documents. When the notice of settlement was filed, McCarthy's attorney apparently believed that Kent's attorney was going to draft a settlement agreement further memorializing the terms of the settlement reached at mediation. But Kent's attorney didn't respond to inquiries about the status of the draft until mid-April, when he asked McCarthy's attorney to prepare the settlement agreement.

¶ 7　　The next day, McCarthy's attorney sent a draft agreement. Despite several follow-up emails, Kent's attorney didn't respond until about a week later, when he said he should have it back soon. With no further response, McCarthy's attorney sent another follow-up email a few days later, stating, "Just wanting to follow up on this since we were looking at the first payment being due by May 1st." Kent's attorney finally responded on May 3 and asked to change the first two payment deadlines to May 15 and June 15.  McCarthy's attorney sent a revised agreement with those changes and an additional proposed change.  McCarthy's attorney followed up several times by email, including in a May 15 email in which he indicated that "[p]ayment should be due today."  McCarthy's attorney later sent yet another revised agreement with the due date moved to May 20.  And on May 22, McCarthy's attorney provided instructions for electronic payment, noting that "the first payment should be due soon."  Still, Kent didn't execute the revised agreement or make any payments to McCarthy.

¶ 8　　On July 18, McCarthy filed a motion to enforce the MOU, attaching an affidavit stating that he hadn't received any payments from Kent under the MOU.  The court held a hearing on August 30,

at which it received exhibits and heard arguments from both parties. The attorneys for both parties indicated that no payments had been made as of that time. The court then issued an order granting McCarthy's motion to enforce and, in accordance with the MOU, entering judgment against Kent for $60,000. Kent appealed.

## II. Analysis

¶ 9 On appeal, Kent contends that the trial court erred by ruling that the MOU is an enforceable contract. According to Kent, the MOU wasn't intended to be a final, binding settlement agreement and lacks sufficiently definite terms to be enforceable. We disagree.

¶ 10 Because the trial court's ruling was based on the undisputed facts and the court's interpretation of the MOU, the ruling presents a question of law that we review de novo. *See Neher v. Neher*, 2015 COA 103, ¶ 33; *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001).

¶ 11 "[F]or a settlement to be binding and enforceable, there must be a meeting of the minds as to the terms and conditions of the compromise and settlement." *Neher*, ¶ 34 (quoting *H. W. Hous. Constr. Co. v. Dist. Ct.*, 632 P.2d 563, 565 (Colo. 1981)). "The requisite meeting of the minds is established by the parties' acts,

conduct, and words, along with the attendant circumstances, and not by any subjective, unexpressed intent by either party." *French v. Centura Health Corp.*, 2022 CO 20, ¶ 27. Additionally, the agreement must contain all the essential terms in a manner that is "sufficiently definite to allow a court to determine whether the parties have complied with them." *DiFrancesco*, 39 P.3d at 1248.

¶ 12　We agree with the trial court's conclusion that, through the MOU, the parties reached a meeting of the minds on the terms of their settlement. As the court noted, "the [MOU] was signed by both parties" and "was clear as to payment obligations as well as to the stipulated judgment in the event that [Kent] missed three consecutive payments." The title of the MOU also signifies that it is a "[s]tipulated [a]greement for [f]ull and [f]inal [s]ettlement" of the lawsuit.

¶ 13　We reject Kent's arguments to the contrary. The fact that the parties indicated in a filing with the court that they planned to "finaliz[e] the settlement documents" doesn't mean that the MOU was not, at the time of its execution, intended to be valid and binding. *See Yaekle v. Andrews*, 195 P.3d 1101, 1110-11 (Colo. 2008) (noting that a signed post-mediation settlement agreement

was understood by the parties to be binding and enforceable, though it was later subject to further negotiation); *see also I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986) ("[T]he mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol or informal contract should be without binding force." (quoting *Coulter v. Anderson*, 357 P.2d 76, 80 (Colo. 1960))) (alteration in original).  Nor does the fact that neither party filed the MOU with the court until McCarthy submitted his motion to enforce.  *See* § 13-22-308(1), C.R.S. 2024 (a written settlement agreement "may be presented to the court" to seek enforcement of it "as an order of the court"); *Yaekle*, 195 P.3d at 1104 ("[S]ection 13-22-308, the process provided by the [Dispute Resolution Act] for cementing an agreement as an order of court, is but one means by which parties can enforce a mediation agreement.").

¶ 14    We also conclude that the MOU contains all the essential terms of settlement and is sufficiently definite for the trial court to have determined that Kent breached it.

¶ 15     The scope of the settlement is clear: the parties agreed "to settle on the total negotiated amount of $30,000 over 60 months ($500/month)" as a "[f]ull and [f]inal settlement" of the claims asserted in the lawsuit.  *Cf. H.W. Hous. Constr.*, 632 P.2d at 565 (there was no meeting of the minds regarding the scope of a settlement where it was unclear whether the payments covered all claims or just some claims).

¶ 16     The mode of payment is also sufficiently clear: Kent was to make payments "via electronic transfer" to McCarthy.  Although the MOU doesn't contain specific instructions about how to electronically transfer payments, McCarthy provided those instructions to Kent on May 22, 2023, a few weeks after the first payment deadline.  Yet even with the instructions, Kent still failed to make any payments.

¶ 17     Contrary to Kent's contention, McCarthy's delay in providing the payment instructions didn't constitute a waiver of his right to seek enforcement of the MOU.  We note that Kent failed to raise waiver in the trial court and, thus, the argument is not preserved.  *See Ortiz v. Progressive Direct Ins. Co.*, 2024 COA 54, ¶ 40 ("In civil cases, we do not review issues that are insufficiently preserved

[through] 'a timely and specific objection or request for relief in the district court.'" (quoting *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 25)) (citation omitted). Regardless, the undisputed facts don't indicate that McCarthy's brief delay in providing electronic transfer instructions was "free from ambiguity" and "clearly manifest[ed] the intention not to assert the benefit" of the MOU. *Tripp v. Parga*, 847 P.2d 165, 167 (Colo. App. 1992); *see also Vogel v. Carolina Int'l, Inc.*, 711 P.2d 708, 711-12 (Colo. App. 1985) ("Waiver requires a clear, unequivocal, and decisive act of a party showing such purpose."); *Duran v. Hous. Auth. of City & Cnty. of Denver*, 761 P.2d 180, 183 (Colo. 1988) ("Where the material facts are not disputed, the determination of whether there has been a waiver is a matter of law."). Thus, while the delay may well have served to waive McCarthy's right to timely receipt of the May 1 payment, it didn't affect the deadlines for future payments — particularly those on June 15, July 15, and August 15, which hadn't been made as of the time of the August 30 hearing.

¶ 18     We also disagree with Kent's contention that a potential ambiguity in the deadline for the first monthly payment renders the MOU unenforceable. The MOU provides that "the first payment [is]

8

due to [McCarthy] on May 1, 2023," and "[t]hereafter, monthly payments shall be made by [Kent] on or before the 15th day of each month." While the due date of the first monthly payment following the initial May 1 payment could be interpreted as May 15 or June 15, that ambiguity doesn't make a difference here because the undisputed evidence shows Kent's breach under either interpretation. Even if the first monthly payment wasn't due until June 15, by the time of the hearing, Kent had already missed the first payment (May 1) and three consecutive monthly payments (June 15, July 15, and August 15) within a 91-day period. Thus, Kent breached the MOU regardless of whether the first monthly payment was due on May 15 or June 15.

¶ 19 Furthermore, we disagree with Kent's contention that the payment deadlines aren't binding because McCarthy exhibited a willingness to push the initial deadlines back while waiting for Kent to execute a more formal agreement. Contrary to Kent's suggestion, relying on language from *DiFrancesco*, 39 P.3d at 1248, there were no "further negotiations . . . required to work out important and essential terms" of their agreement. The parties had already worked out the essential terms for payment, including the deadlines

for payment.  And they never executed any agreement modifying those terms.  Instead, they only shared proposals and counterproposals for a more formal written agreement that would include additional, and sometimes different, terms than those in the original MOU — but none of those proposals were accepted and became binding agreements to modify the MOU.  *See Baldwin v. Peters, Writer & Christensen*, 349 P.2d 146, 147 (Colo. 1960) (a counteroffer operates as a rejection of a previous offer).

¶ 20    Finally, the parameters of the stipulated judgment are sufficiently clear: "If more than three consecutive monthly payments are missed within 91 days, a Confession of Judgment for $60,000 shall enter secured by a Deed of Trust on [Kent's] rental property located [in Alabama]."  The plain language of the MOU clearly provides that a stipulated judgment would be entered if Kent missed three monthly payments in a row within a 91-day period.  This provision cannot reasonably be interpreted to mean anything else, and Kent's attempts to inject ambiguity into it are unavailing.  *See Sunshine v. M. R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978) (when there is only one reasonable meaning of a contract term, the parties are bound by that meaning).  And, as

10

we've already stated, the undisputed facts confirm that Kent missed three monthly payments in a row within a 91-day period.

¶ 21    Therefore, we conclude that the MOU constitutes a binding contract and, thus, the trial court didn't err by enforcing it as such.

### III.    Disposition

¶ 22    The judgment is affirmed.

JUDGE TOW and JUDGE KUHN concur.