24CA1315 Burke v Lola's Rescue 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1315
Arapahoe County District Court No. 22CV90
Honorable Elizabeth Beebe Volz, Judge

Nicolette Burke,

Plaintiff-Appellant,

v.

Lola's Rescue,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Tow, J., concurs
Taubman*, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Landry Law, P.C., Scott P. Landry, Lone Tree, Colorado; Westerfield & Martin, LLC, Zachary S. Westerfield, Denver, Colorado, for Plaintiff-Appellant

Environmental and Animal Defense, Alexa McKay, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiff, Nicolette Burke, appeals the summary judgment in favor of defendant, Lola's Rescue (the Rescue).  We reverse and remand with instructions.

## I.     Background

¶ 2     This case arises from Burke's adoption of a kitten named Gizmo from the Rescue.  Burke's amended complaint1 alleged that before she brought Gizmo home, a veterinarian certified that he was disease free and "in good physical condition."  Burke alleged that shortly after she brought Gizmo home, he was diagnosed with ringworm and "lost his meow."  She asserted various claims for relief against the Rescue for alleged damages she had incurred related to Gizmo's adoption and veterinary treatments for ringworm. The Rescue filed counterclaims against Burke based on her actions after Gizmo's adoption, including making allegedly defamatory posts online about the Rescue.

---

1 Burke initially filed a complaint in small claims court seeking reimbursement for Gizmo's medical bills, and the Rescue removed the case to the district court by asserting counterclaims in excess of the small claims court's jurisdiction.

¶ 3 Before Burke filed her amended complaint in September 2022, the parties had discussed settling the case in a series of emails, which we discuss next.

## A. The July 13 Exchange

¶ 4 As relevant here, Burke's counsel sent an opening settlement offer on May 27, 2022. The Rescue's counsel made a counteroffer on June 2, 2022. On June 6, 2022, Burke's counsel rejected the Rescue's counteroffer and proposed another offer with new terms. Burke's new offer stated in relevant part that she would "agree to remove all publications regarding this incident that she is capable of removing." The Rescue's counsel submitted a new counteroffer on June 17, 2022, the terms of which included paying Burke $1,068.59. The Rescue's counsel also stated that the Rescue's only dispute with Burke's proposed offer concerned the amount of the financial settlement; the Rescue agreed with Burke's other proposed settlement terms, including her agreement to "remove posts."

¶ 5 On July 6, 2022, Burke's counsel responded, again rejecting the Rescue's counteroffer and proposing a new offer. The offer said that Burke would accept a payment of $1,068.59 to resolve Gizmo's post-adoption veterinarian bills and Burke's litigation-related

expenses, but she would "not remove any of her publications mentioning [the Rescue] by name," and that if the Rescue wanted "those removed [the Rescue] [would] have to pay [Burke] the $1,337.16 [that she had] previously demanded." Burke's counsel further noted that Burke was "willing to sign" a mutual settlement agreement that would prevent the parties from filing future claims against each other based on the facts surrounding Gizmo's adoption and statements Burke had made about the Rescue, so long as the Rescue agreed to file a stipulated motion to dismiss with prejudice all claims and counterclaims.

¶ 6    On July 13, 2022, the Rescue's counsel responded as follows (July 13 exchange):

> My clients will accept [Burke's] offer to remove her posts in exchange for payment of $1337.16, plus the execution of a mutual settlement agreement and release stating that the parties cannot assert claims against each other in the future based upon the facts surrounding Gizmo's adoption or [Burke's] statements regarding [the Rescue]; as well as the previously agreed upon confidentiality, nondisclosure, and nondisparagement clauses.
>
> I will circulate a draft agreement and motion later this week. Once the draft is agreed upon and signed, I will send a check to your office for [Burke's] amount. Once you let me know

that the check is received, I will file the stipulated dismissal.

The same day, Burke's counsel responded, "Glad that we could reach a settlement. I'll look for the agreement."

¶ 7 Approximately a week later, the Rescue's counsel circulated a draft agreement and asked if it was "agreeable" to Burke. Burke's counsel replied with proposed changes tracked in the draft agreement, but the Rescue responded that Burke's changes were "unacceptable and contrary to the specific offer of settlement [Burke] presented." The Rescue's counsel thus reattached "the original draft of the settlement agreement pursuant to [Burke's] offer, which [the Rescue] accepted," and requested that Burke sign those terms, or the Rescue would move forward with litigation. After a phone call with Burke's counsel, the Rescue's counsel sent another email saying that the Rescue would "still consider any reasonable edits on settlement . . . to reflect the offer [Burke] made and [the Rescue] accepted."

B. Proceedings After the July 13 Exchange

¶ 8 In September 2022, the Rescue filed its amended answer and counterclaims. Burke filed her response to the counterclaims in

4

December 2022.  In March 2023, the court approved the parties' proposed case management order, which included a statement that they had "conferred concerning possible settlement," but that further efforts were "reasonable and necessary."

¶ 9     In June 2023, the Rescue sought leave to file supplemental and amended counterclaims against Burke, including, as relevant here, a counterclaim for breach of contract premised on the allegation that the July 13 exchange constituted a settlement offer that Burke had accepted.  The court granted the Rescue's request to add a supplemental counterclaim for breach of contract.

¶ 10    The Rescue later moved for summary judgment (the motion) with respect to its breach of contract counterclaim.  It asserted that the July 13 exchange was an enforceable settlement agreement, and that Burke had breached that agreement by failing to "remove her posts," conditioning the removal of her posts on revisions to the agreement, and failing to memorialize the agreement and release. In her response, Burke asserted that the July 13 exchange wasn't enforceable because the parties hadn't mutually assented to its material terms.

¶ 11     The district court partially granted the motion.  It determined that the parties had entered into an enforceable settlement agreement on July 13, 2022, when the Rescue accepted Burke's offer and Burke's counsel responded acknowledging the agreement. The court found the settlement agreement consisted of the following essential terms:

> (1) [The Rescue] will pay Burke $1,337.16;
>
> (2) Burke will remove her posts referencing [the Rescue];
>
> (3) All claims and counterclaims related to the cat adoption will be dismissed; [and]
>
> (4) The parties will execute an agreement, that contains all of the above, as well as: (a) confidentiality clause; (b) nondisclosure clause; and (c) non-disparagement clause.

The court further found that while the parties couldn't agree on the language of the settlement and release, that remaining dispute didn't "alter the enforceability of their agreement," because their attempts to add other agreements or reserve the ability not to remove posts concerning the Rescue weren't part of the July 13 exchange.  The court determined that both parties had failed to comply with the essential terms of the agreement because it was undisputed that (1) the Rescue had failed to pay Burke $1,337.16;

6

(2) Burke had failed to remove "the posts referenced in the agreement"; and (3) the parties had failed to reduce their agreement to writing. The court therefore granted the motion in part by concluding that an enforceable settlement agreement existed, but it denied summary judgment to the extent that the Rescue was seeking a determination that only Burke breached the agreement. The court directed the parties to comply with the terms of the agreement, vacated the trial, and dismissed all remaining claims and counterclaims.

¶ 12    Burke filed a motion for reconsideration, which the court denied. Burke appeals.[2]

## II.    Preservation

¶ 13    In its answer brief, the Rescue asserts that Burke didn't preserve her contract formation arguments that (1) no meeting of the minds existed sufficient to form a contract and (2) "agreements to agree" cannot form a binding contract. We disagree.

¶ 14    In her response to the motion, Burke raised these exact arguments. In ruling on the motion, the court acknowledged, but

---

[2] Burke doesn't appeal the court's denial of her motion for reconsideration.

rejected, Burke's arguments and concluded that the July 13 exchange was an enforceable contract. Therefore, Burke's arguments were adequately preserved. *See In re Estate of Owens*, 2017 COA 53, ¶ 21 ("Where an issue was brought to the district court's attention and the court ruled on it, it is preserved for appellate review . . . .").

### III. Standard of Review and Applicable Law

¶ 15 We review de novo a district court's ruling on a motion for summary judgment. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11. In so doing, we apply the same standards as the district court. *City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 9. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Gibbons*, ¶ 11; C.R.C.P. 56(c). The moving party bears the burden of establishing the nonexistence of a genuine issue of material fact, and we give the nonmoving party the benefit of all favorable inferences reasonably drawn from the facts, resolving all doubts against the moving party. *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 8; *Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 16.

¶ 16     When a court's determination of whether a contract exists is based on undisputed facts memorialized in writing, the ruling presents a question of law that we review de novo. *See DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001) (reviewing de novo the district court's determination of whether a settlement agreement existed when the parties' dispute concerned the meaning of a transcript memorializing the alleged agreement but not the facts underlying it); *Neher v. Neher*, 2015 COA 103, ¶ 33 (citing *DiFrancesco*, 39 P.3d at 1247).

¶ 17     The formation of a contract requires a manifestation of mutual assent to the terms of the contract and bargained-for consideration. *Univ. of Denv.*, ¶ 47 (noting that mutual assent to a contract's terms refers to a "meeting of the minds" (citation omitted)); *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986).

¶ 18     "The requisite meeting of the minds is established by the parties' acts, conduct, and words, along with the attendant circumstances, and not by any subjective, unexpressed intent by either party." *French v. Centura Health Corp.*, 2022 CO 20, ¶ 27.

¶ 19     What constitutes a material term of a contract generally is determined from the intention of the parties as disclosed by the

9

surrounding facts. *Neher*, ¶ 34. When parties ascribe different meanings to a contractual term, "no meeting of the minds has occurred," and no valid contract exists. *French*, ¶ 27 (quoting *Sunshine v. M.R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (Colo. 1978)).

¶ 20    Parties must also mutually assent to sufficiently definite and certain terms. *Univ. of Denv.*, ¶ 49. "[T]here can be no binding contract if it appears that further negotiations are required to work out important and essential terms." *DiFrancesco*, 39 P.3d at 1248. Thus, agreements to agree in the future are generally unenforceable, and if parties agree on some issues, the absence of agreement on other material issues prevents the formation of a binding contract. *Id.*

¶ 21    Therefore, to be enforceable, a contract must show (1) a "meeting of the minds" (2) as to the contract's sufficiently definite material terms. *H.W. Hou. Constr. Co. v. Dist. Ct.*, 632 P.2d 563, 565 (Colo. 1981); *see DiFrancesco*, 39 P.3d at 1248.

¶ 22    A settlement agreement is a contract to end judicial proceedings. *Recreational Dev. Co. of Am. v. Am. Constr. Co.*, 749 P.2d 1002, 1005 (Colo. App. 1987). We may only enforce a

settlement agreement "if it constitutes an enforceable contract."
*Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008).

## IV.  Analysis

¶ 23     Burke contends that the district court erred in determining that the July 13 exchange was an enforceable settlement agreement because the Rescue failed to meet its burden to show that the parties had agreed to all the material terms of the contract and that such material terms were sufficiently definite.  We agree.

¶ 24     The district court found that Burke submitted an offer on July 6, 2022, which the Rescue accepted on July 13, 2022.  The court found in part that the material terms of the offer were that (1) Burke would remove her posts referencing the Rescue and (2) all claims and counterclaims regarding Gizmo's adoption would be dismissed.

¶ 25     The record of counsels' email discussions supports these findings.  Burke doesn't dispute these facts; however, she disputes the court's conclusion that they demonstrate mutual assent to definite terms, such that the July 13 exchange is an enforceable settlement agreement.

¶ 26     Burke argues that the parties' communications demonstrate that they hadn't agreed on the material terms of the proposed settlement. We agree.

¶ 27     The record demonstrates that Burke and the Rescue ascribed different meanings to Burke's agreement to "remove" the social media posts. In the July 6, 2022, offer, Burke's counsel indicated that Burke wouldn't agree to remove "any of her publications mentioning [the Rescue] by name" unless the Rescue paid her $1,337.16. But in the July 13 exchange, the Rescue said it "accept[ed] [Burke's] offer to remove her posts." The Rescue argues that its use of the phrase "her posts" was a clear reference to a "term of negotiation from previous emails" specifying that the Rescue would pay Burke $1,337.16 in exchange for her removing "any and all" posts.

¶ 28     It's possible to infer from the terms of the July 13 exchange and the parties' discussion leading up to it that Burke would be required to remove multiple posts she had made about the Rescue, including any posts that didn't specifically mention the Rescue by name. However, as Burke argues, it's also possible to infer that this term required her to remove only the posts mentioning the Rescue

by name. *See Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000) (a contract's terms are ambiguous when they are "susceptible [of] more than one reasonable interpretation"). Indeed, the court acknowledged that the parties disputed which posts Burke would remove.

¶ 29 Thus, despite the court's implied finding otherwise, the record doesn't demonstrate that the parties had mutually understood and agreed to the scope of the social media posts that Burke would be required to remove in exchange for compensation from the Rescue. And at the summary judgment stage, the district court was to resolve all doubts in Burke's favor. *Edwards*, ¶ 16. Because the term requiring Burke to remove her social media posts was material to the settlement agreement, the court erred in concluding that the July 13 exchange was an enforceable agreement.

¶ 30 The district court therefore should have denied the motion. *See id.* Accordingly, we reverse the district court's order granting summary judgment in part on the Rescue's breach of contract counterclaim. On remand, the court must vacate that judgment and its associated order directing the parties to comply with the terms of the July 13 exchange. The court must also reinstate the

parties' remaining claims and counterclaims that were not subject to the motion for summary judgment but were dismissed by the court in its judgment.

## V.   Request for Appellate Attorney Fees

¶ 31    The Rescue requests an award of appellate attorney fees as a sanction against Burke under C.A.R. 38(b), which permits an award of attorney fees if we determine that an appeal is frivolous. *Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 30.  Because Burke has prevailed on appeal, we deny the Rescue's request for attorney fees under C.A.R. 38(b).

## VI.   Disposition

¶ 32    The district court's order granting summary judgment on the Rescue's breach of contract claim is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE TOW concurs.

JUDGE TAUBMAN specially concurs.

JUDGE TAUBMAN, specially concurring.

¶ 33    I agree with the majority that we must reverse the trial court's summary judgment in favor of defendant, Lola's Rescue, and against plaintiff, Nicolette Burke.  Nevertheless, I understand why the trial court granted the summary judgment motion — because it appeared to the court that the parties had substantially agreed on the terms of a settlement agreement.

¶ 34    I write separately to express my concern and disappointment that the parties and their counsel were unable or unwilling to settle a relatively minor dispute concerning the adoption of the kitten Gizmo.  Although at one point Lola's Rescue threatened to file counterclaims against Burke for hundreds of thousands of dollars, the parties' putative settlement on July 13, 2022 provided that Lola's Rescue would pay Burke approximately $1,350 to settle Burke's claims against it.

¶ 35    The contemplated settlement also involved Burke removing certain allegedly defamatory posts about Lola's Rescue.  In addition, it provided for the dismissal of all claims and counterclaims regarding the cat adoption and the execution of a written settlement

agreement with confidentiality, nondisclosure, and nondisparagement clauses.

¶ 36 Significantly, the parties do not assert that the dismissal of all claims and counterclaims or the aforementioned clauses were an obstacle to settlement. Accordingly, the parties' continuing disagreement appears to focus on what social media posts Burke had agreed to delete.

¶ 37 This case is not like other vigorously litigated cases in which constitutional issues, statutory interpretation, or large sums of money are at issue. Rather, the parties have vigorously contested only one aspect of an apparent settlement agreement. Doing so may have caused the parties to expend substantial attorney fees and their lawyers to spend a great deal of time on a relatively minor issue.

¶ 38 On remand, I hope that the parties can expeditiously settle this matter without the expenditure of additional legal and judicial resources.