23CA2059 Lyon v Jones 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2059
San Miguel County District Court No. 22CV30001
Honorable Keri A. Yoder, Judge

---

Lois Duncan Lyon,

Plaintiff-Appellee and Cross-Appellant,

v.

Cameron L. Jones, Leland M. Jones, and Tegan H. Jones,

Defendants-Appellants and Cross-Appellees.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Martinez* and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Anderson Notarianni McMahon LLC, Geoffrey P. Anderson, Joshua D. McMahon, Denver, Colorado; Tueller Gibbs Dye, LLP, Douglas R. Tueller, Andrew J. Gibbs, Telluride, Colorado, for Plaintiff-Appellee and Cross-Appellant

Goodspeed Merrill, Miro Kovacevic, Richard L. Merpi II, Robert S. Hunger, Englewood, Colorado, for Defendants-Appellants and Cross-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     This appeal centers around an easement over property owned by defendants Cameron L. Jones, Leland M. Jones, and Tegan H, Jones (the Jones Defendants).  The district court found that plaintiff, Lois Duncan Lyon, had acquired an express and prescriptive easement over land owned by the Jones Defendants and defendants Placerville, LLC, and Christopher and Susan Stone. The Jones Defendants appeal the district court's finding that Lyon acquired an easement, the district court's findings as to the scope of that easement, and its award of costs associated with the litigation.  Lyon cross-appeals the district court's findings regarding the easement and requests her costs on appeal.  We affirm in part, reverse in part, and remand to the district court for further findings.

I.     Background

¶ 2     When Lyon first brought this case, she split the easement she asserted into five segments (Segments 1, 2, 3, 4, and 5), as shown on the map below.



¶ 3      In this opinion, we will refer to portions of the easement by these five segments.[1]  We detail the ownership of the properties

---

[1] The Jones Defendants conceded during oral argument that they aren't challenging the district court's order as it relates to Segments 1 and 2.

relevant to this appeal and how they relate to each easement segment below.

### A. Ownership of the Lyon Property and the Property Servient to Segments 3, 4, and 5

¶4 Before 1971, William Edwin Jacobs owned both the property that is currently owned by the Jones Defendants and the property that is currently owned by Lyon. In 1971, Jacobs conveyed a portion of his property to Michael and Mary Stranahan and Kathleen Jones and, as part of the conveyance, created and retained an easement (1971 Easement). Jacobs also retained a portion of his property to the southwest of this parcel and leased back the land he sold to the Stranahans and Kathleen Jones until sometime in the mid-1970s.

¶5 In 1986, Jacobs conveyed the remainder of his property to his children and their spouses with Barbara and Lance Earley owning an undivided one-third interest, Joanne and Robert Showman owning an undivided one-third interest, and Beverly Jacobs (referred to in this opinion as Beverly Tennant), owning an undivided one-third interest. Jacobs made the conveyance "subject to easements or rights-of-way of record or as existing on or across

said property." Approximately one year later, in 1987, Jacobs's children conveyed two-thirds of their property to the Stranahans and Kathleen Jones but retained a forty-acre parcel to the southwest. The 1987 deed to the Stranahans and Kathleen Jones contained a provision granting Jacobs's children an easement over the conveyed land (1987 Easement). The Earleys and the Showmans conveyed their remaining interest in the forty-acre parcel to Beverly Tennant in 1987.

¶ 6    From what we can discern from the record, Kathleen Jones granted her interest in the property to the Jones Trust in 1989 and remained as a trustee of the trust along with Henson Jones (referred to as Hans Jones in this opinion). Later, Kathleen and Hans Jones, as trustees, conveyed the property in the trust to the Jones Defendants. Many years later, the Stranahans interest in the property was conveyed to the Leland Jones through a series of transactions. Segments 3, 4, and 5 run across this property.

¶ 7    In late 1989, Beverly Tennant entered into an option contract with Lyon for the forty-acre parcel. Three years later, Lyon exercised her option and purchased the forty-acre parcel (the Lyon Property).

¶ 8    Lyon brought suit in 2022 to quiet title under C.R.C.P. 105(a). Lyon named the Jones Defendants, the Stones, and Placerville as defendants.  In her complaint, Lyon alleged ten claims for relief. First, she sought a declaratory judgment that she had acquired an easement appurtenant over Segments 1 through 5 for residential use, including "for vehicular access . . . and for utility lines" and entitling her successors and assigns to such use.  Second, she requested the court find that she had an express easement over the Jones Defendants' property for ingress and egress to her property for vehicular use and the placement of utility lines for residential and other uses.  Third, she asked the court to find that she acquired an express easement over Segments 1 and 2 for vehicular ingress and egress and for utility placement.  Fourth, she sought a declaration that she had acquired an easement by implication on the road over the Jones Defendants' property.  Fifth, she requested the court find that she had acquired an easement by prescription over Segments 1 through 5.  Sixth, she sought a permanent injunction enjoining defendants or their successors form interfering with her use of the road.  Seventh, she asserted that the Jones

Defendants breached the implied covenant of good faith and fair dealing. Eighth, she requested a permanent injunction enjoining the Jones Defendants from interfering with her development permit application for improvements to Segments 2 through 5. Ninth, she sought a declaration as to the location of her deeded access rights. And tenth, she requested that a provision in the 1971 Easement allowing for termination of the easement be found void.

¶ 9 A few months after filing suit, Lyon filed a motion for partial summary judgment for her claims of an express easement over Segments 1 through 5. The Jones Defendants filed a cross-motion for summary judgment requesting the court grant them partial summary judgment on all claims except the prescriptive easement claim. The district court granted Lyon's motion for partial summary in part, finding that she had an express easement over Segments 1, 3, and 4 and a portion of Segment 2. The court denied summary judgment on the remaining issues, including whether the scope of the easement included utilities.

¶ 10 The case then proceeded to trial on the remaining claims. At trial, the district court permitted Lyon to present evidence that she had acquired a prescriptive easement over Segments 1 through 5

even though it had entered summary judgment in favor of Lyon as to an express easement over Segments 1, 3, 4, and 5 and a portion of Segment 2.

¶ 11 Following the trial, the district court clarified that Lyon had a prescriptive easement over Segments 1 and 2, found that Lyon had a prescriptive easement over Segments 3 through 5, ordered Segment 5 to be relocated, allowed the installation of utilities over the entire length of the road, and granted injunctive relief enjoining defendants from interfering with Lyon's use of the road. The court dismissed with prejudice Lyon's easement by implication claim, the breach of implied covenant of good faith and fair dealing claim, the permanent injunction claim regarding Lyon's development permit application, and Lyon's request that a termination provision in the 1971 Easement be declared void.

¶ 12 Lyon then submitted a bill of costs pursuant to C.R.C.P. 54(d), requesting $100,141.92. The Jones Defendants objected arguing, in part, that Lyon couldn't recover $23,253.92 because they were prelitigation costs. The district court disagreed and entered an order against the Jones Defendants for $99,784.82.

II.    Analysis

¶ 13    To succinctly analyze the issues presented by the Jones Defendants in their appeal and by Lyon in her cross-appeal, we address the issues in the following order.  First, we address the Jones Defendants' contention that the district court erred by finding that an express easement existed at Segments 3 and 4 through the 1971 and 1987 deeds, respectively.  In our express easement analysis, we also address Lyon's contention that the district court erred by declining to find that the 1971 termination provision related to Segment 3 was void.  Second, we address the Jones Defendants' contention that the district court erred by making express and prescriptive easement findings related to Segment 5.  Third, we address the Jones Defendants' contention that the district court erred by awarding prelitigation costs to Lyon. Fourth, we address the Jones Defendants' remaining claims related to the district court's allowance of utility installation and its grant of a permanent injunction.  And fifth, we address Lyon's request for costs on appeal.  Because we conclude that an express easement existed, we decline to address Lyon's contention that we should find the district court's alternate findings that a prescriptive easement

existed appropriate.  We similarly decline to address the Jones Defendants' contention that the district court erred by making express and prescriptive easement findings related to Segments 3 and 4.

## A.     Segments 3 and 4

¶ 14    We first address the Jones Defendants' contention that the district court erred by finding the existence of an express easement at Segments 3 and 4.

### 1.     Preservation

¶ 15    As an initial matter, Lyon contends that the Jones Defendants failed to preserve their argument that the district court erred by granting her motion for partial summary judgment.  According to Lyon, the Jones Defendants' response to the motion for summary judgment was deficient because they "asserted no contract law argument, failed to admit or deny any facts, included no affidavit, exhibit, or substantive legal argument" and, instead, "incorporated another motion into their response, violating C.R.C.P. 121(c), § 1-15(1)(d)."  We disagree.

¶ 16    While some of the Jones Defendants' legal arguments, including their contract law argument, weren't set forth in their

response to Lyon's motion for partial summary judgment, they were brought before the court in the cross-motion for partial summary judgment, which the Jones Defendants incorporated into their response to Lyon's motion for partial summary judgment. Because all relevant arguments were presented to the district court before it made its ruling on the issue, these arguments are preserved for our review. *See In re Estate of Owens*, 2017 COA 53, ¶ 21 ("Where an issue was brought to the district court's attention and the court ruled on it, it is preserved for appellate review . . . .").

## 2. Legal Principles

¶ 17 "An easement is a right conferred by grant, prescription or necessity authorizing one to do or maintain something on the land of another." *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 32 (quoting *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo. 1998)). To create an express easement, the servient estate owner, in compliance with the statute of frauds, either makes a conveyance or enters into a contract intending to create a servitude. *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 47. A "reservation in a deed conveying the servient or burdened property to another" may create an easement.

*Id.* at ¶ 48.  "Words which clearly show the intention to give an easement are adequate to demonstrate its creation, provided the language in the instrument is sufficiently definite and certain in its terms."  *Id.* (quoting *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1356 (Colo. App. 1995)).

¶ 18    We review a district court's interpretation of recorded instruments de novo.  *Kroesen,* ¶ 31.  Similarly, we review a district court's grant of summary judgment de novo and apply the same standard as the district court.  *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 11.  Summary judgment is only appropriate "when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law."  *Id.* at ¶ 12.

### 3.    The 1971 Easement

¶ 19    In the 1971 conveyance, Jacobs reserved an easement over the Jones Defendants' property "for ingress and egress for road purposes and [l]ivestock drive[s]."  The 1971 conveyance further provided that the easement was "to be appurtenant to the said property being retained by First Party *and which easement shall be extinguished after five or more years of nonuse by First Party.*"

11

(Emphasis added.) While the deed itself doesn't name the "First Party," the real estate contract provides that the "First Party" is Jacobs.

¶ 20 The parties agree that an easement was created and that the 1971 easement dealt solely with Segment 3. The parties disagree, however, as to whether the termination provision (five-year use provision) — the italicized language above — was complied with.

¶ 21 The Jones Defendants contend (1) that the easement created by the 1971 deed required Jacobs specifically to comply with the five-year use provision to maintain the easement and (2) that whether Jacobs complied with the five-year use provision is a question of material fact that should have precluded the court from granting summary judgment.

a. The 1971 Deed Created an Easement Appurtenant

¶ 22 The Jones Defendants dispute whether Jacobs himself had to comply with the five-year use provision or whether his guests and successors could prevent its termination through their use of the property. Because it's pertinent to our analysis of the five-year use provision, we first determine what type of easement the 1971 deed created.

¶ 23   A party can acquire either an easement in gross or an easement appurtenant. *Lobato v. Taylor*, 71 P.3d 938, 945 (Colo. 2002). Easements in gross don't "belong to an individual by virtue of her ownership of land, but rather [are] a personal right to use another's property." *Id.* Conversely, easements appurtenant "run[] with the land" and are "meant to benefit the property, or an owner by virtue of her property ownership." *Id.* There is a presumption that an easement is appurtenant, not in gross. *Id.*

¶ 24   Here, the 1971 deed contained explicit language stating that "said easement [is] to be appurtenant to the said property being retained by First Party." This language shows that the intent of the parties in reserving an easement in the 1971 deed was to benefit the land retained by Jacobs, not just Jacobs personally. This conclusion is bolstered by the presumption that an easement is appurtenant. *See id.*

¶ 25   Accordingly, we agree with the district court that an easement appurtenant over Segment 3 was created by the 1971 deed.

### b.   The Five-Year Use Provision

¶ 26   The Jones Defendants argue that, regardless of whether the 1971 Easement was appurtenant, the easement would still be

terminated if Jacobs himself didn't comply with the five-year use provision — that is if *he* ceased using the easement for five years. We aren't persuaded.

¶ 27 When easements are created by reservation, we determine the extent of the easement by analyzing the conveyance instrument for the parties' intent. *Gold Hill*, ¶ 48. Here, the express language stated that the parties intended to create an easement appurtenant that would run with the land and benefit the land. There is also evidence that the parties intended for the easement to terminate upon nonuse of the easement.

¶ 28 The Jones Defendants rely on language in the 1971 Easement stating that the "easement shall be extinguished after five or more years of nonuse by First Party." According to the Jones Defendants, "First Party" refers to Jacobs himself and doesn't include his guests, successors, or assigns. From this, they argue that nonuse of the easement *by him* for five or more years terminates the easement and, it's immaterial that his guests or his successors used the easement even though the 1971 Easement is expressly appurtenant. We disagree with the Jones Defendants' narrow reading of the term "First Party" in the conveyance document.

¶ 29    The easement reservation paragraph of the 1971 deed refers to the "First Party" six times:

> Subject to and excepting a private right of way and easement across the above described real property to properly being retained by First Party, for ingress and egress for road purposes and [l]ivestock drive, said easement to be appurtenant to the said property being retained by First Party and which easement shall be extinguished after five or more years of nonuse by First Party.  The easement shall be along the existing road, as used and now in place, from the County Road to the land reserved by the First Party; provided, however, said easement for ingress and egress and livestock drive may be relocated as to minor changes so as not to interfere with First [P]arty's use thereof, but any major change in said right of way or easement or major relocation thereof shall be subject to approval by written consent of First Party first had and received.

(Emphasis added.)

¶ 30    Two of these references — the first and fifth — only make sense if "First Party" is understood to include at least the guests and invitees of Jacobs, as both refer to the use of the easement by the "First Party" for ingress and egress and livestock drives, activities that couldn't be reasonably understood to be performed only by Jacobs himself.  The other four references to "First Party"

15

are ambiguous as to whether they could mean either Jacobs personally, on the one hand, or Jacobs and his guest, successors, and assigns, on the other hand. That is, when read in isolation, the use of the term "First Party" could be read rationally with either meaning.

¶ 31    But interpreting the third use of "First Party" to be limited to Jacobs personally — and not also his successors or assigns — would, as a practical matter, directly conflict with the express provision that the easement is "appurtenant to the said property." After all, the defining characteristic of an "easement in gross" — the antithesis of an appurtenant easement — is that it is "a mere personal interest in, or right to use, the land of another." *WRWC, LLC v. City of Arvada*, 107 P.3d 1002, 1004 (Colo. App. 2004); *see also Sinclair Transp. Co. v. Sandberg*, 2014 COA 76M, ¶ 35 ("At common law in both England and the United States, 'easements in gross, having no dominant estate to which to be attached, were considered personal to their holder and, as such, non-assignable.'" (quoting *Box L Corp. v. Teton County*, 2004 WY 75, ¶ 12)). Accordingly, the only interpretation of "First Party" that is consistent with the easement being appurtenant is that "First

16

Party" includes Jacobs' successors and assigns. *See, e.g.*, *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 n.14 (Colo. 2009) ("Faced with two readings of a contract, we choose the one that harmonizes interrelated contract provisions."); *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 846 (Colo. App. 2011) ("It is paramount in contract interpretation that we read a contract's terms in harmony and give effect to all the contract's provisions.").

¶ 32     The Jones Defendants' reliance on *Brown v. McDavid*, 676 P.2d 714 (Colo. App. 1983), doesn't persuade us otherwise. In *Brown*, a division of this court concluded that a covenant document creating easements could be terminated even though the covenant document provided that the covenants "run with the land." *Id.* at 717-18. The covenant document in question had a clause that allowed for termination with "the written consent of the owners of sixty-six per cent . . . of the parcels." *Id.* at 717. The division held that when "the covenant document containing the termination clauses in question[] was admittedly relied upon and accepted by all parties, all parties knew the covenants could be terminated and this knowledge became part of the basis of their bargain." *Id.* at 718. We agree with the Jones Defendants that under *Brown*, a

17

conveyance creating an easement appurtenant may also provide for the termination such easement upon the occurrence of an agreed upon event. Indeed, there is no dispute that the 1971 deed contains such a provision — that is, it terminates upon the nonuse of the easement for five years or more. *Brown* merely stands for the proposition that such a provision is enforceable, even for an appurtenant easement. But *Brown* doesn't shed any light on the question of *whose* nonuse triggers the easement's termination. And, as we discussed at length above, the only way to harmonize the terms used in the 1971 deed is to interpret "First Party" to include the successors, assigns, and guests of Jacobs.

¶ 33    Simply put, because the express intent of the parties was to create an easement appurtenant that would benefit the land and its future owners, we reject the contention that the five-year use provision was specific to Jacobs himself. Rather we conclude that the "First Party" referenced in the easement conveyance includes not only Jacobs, but also Jacobs's guests, successors, and assigns such that use of the easement by Jacobs's guest, successors, or assigns constitutes continued use under the five-year use provision.

18

### c. Evidence of Continuous Use

¶ 34    Because the five-year use provision wasn't solely applicable to Jacobs, the district court didn't err by finding that it wasn't triggered. The district court relied on affidavits of continual use from Lyon, as the current owner; previous owners; and guests of the previous and current owners confirming their use of the road starting in 1971. The district court accepted these affidavits of continual use as true, citing section 38-35-107, C.R.S. 2025, which states that

> [a]ll recitals contained in deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting title to real property that have remained of record in the office of the county clerk and recorder of the county where the real property affected is situated for a period of twenty years shall be accepted and received as prima facie evidence of the facts recited therein.

¶ 35    Because many of the continuous use affidavits described encumbrances to property and because they were recorded more than twenty years ago in the county where the property is located, the district court was correct in accepting them as prima facia evidence of the use recited by each affiant. *See id.* Lyon's affidavits were recorded many years later and therefore don't fall under

section 38-35-107, but the district court was still entitled to accept them as credible evidence of use. *See Kincaid v. W. Operating Co.*, 890 P.2d 249, 253 (Colo. App. 1994) ("Credibility of witnesses, sufficiency, probative effect, and weight of the evidence, and inferences and conclusions to be drawn from the evidence are all within the province of the trial court as trier of fact"). Furthermore, the Jones Defendants don't point to evidence that the affidavits of continuous use are incorrect or cite case law stating that the district court erred in relying on them. Rather, the Jones Defendants primarily rely on the fact that Jacobs himself didn't use the easement beyond 1983 and possibly not for five years prior. Because, however, Jacobs's guest, successors, and assigns could comply with the five-year use provision, it's immaterial whether Jacobs personally used the easement continuously.

¶ 36    Thus, the district court didn't err by concluding that an express appurtenant easement existed and that the five-year use provision hadn't been triggered.

4.    The 1987 Easement

¶ 37    In the 1987 conveyance, Jacobs's children reserved an easement over the Jones Defendants' property by stating as follows:

20

Reserving, however, a private right of way and easement across the above described real property to the SW1/4 SE1/4 Section 10, Township 42, Range 10, for ingress and egress for road purposes and livestock drive, said easement to be appurtenant to the SW1/4 SE1/4 Section 10, Township 42, Range 10. The location of the private right of way and easement shall be mutually agreed upon by the parties and so located as to not unduly burden the property conveyed to grantees.

¶ 38 The parties agree that the 1987 Easement dealt solely with Segments 4 and 5. While the parties agree that Segment 5 was included in the 1987 Easement, we address the district court's findings regarding Segment 5 *infra* Part II.B. In this section, we address only the 1987 Easement as it relates to Segment 4.

¶ 39 The Jones Defendants contend (1) that the easement created by the 1987 deed isn't valid because it was an agreement to agree; and (2) that, even if it was valid, the district court erroneously granted summary judgment when an issue of material fact existed that should have precluded the court from granting summary judgment.

a. The 1987 Easement Wasn't an Agreement to Agree

¶ 40 We first address the Jones Defendants' contention that the 1987 Easement isn't valid because it was an agreement to agree.

21

We conclude that the provision requiring the parties to "mutually agree[]" upon the location of the easement doesn't invalidate the easement.

¶ 41    Conveying an easement through an instrument is "rooted in contract law." *Ute Water Conservancy Dist. v. Fontanari*, 2022 COA 125M, ¶ 35 (quoting *McMahon v. Hines*, 697 N.E.2d 1199, 1205 (Ill. App. Ct. 1998)). When parties attempt to contract, there isn't a "binding contract if it appears that further negotiations are required to work out important and essential terms." *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1248 (Colo. App. 2001). And "[a]greements to agree in the future are generally unenforceable because the court cannot force parties to come to an agreement." *Id.*

¶ 42    While the parties in this case neglected to locate the 1987 Easement at the time of the conveyance, the provision allowing for agreement in the future isn't a traditional agree-to-agree situation that would render the agreement void. Typically, in a situation when parties have an agreement to agree, the entire agreement isn't binding, and the contract is found to be unenforceable. *See id.* (holding that the settlement agreement between the parties wasn't

binding when the "parties would have to agree to final written terms before being bound").  But here, the easement itself, not the location, was the consideration for the conveyance and was agreed upon in the conveyance.  And, if the *location* of the easement was an essential term of conveyance, then the entire conveyance, not just the easement provision, would be void because the parties failed to agree.

¶ 43     Thus, the parties created a valid easement with an agreement to determine the location of the easement following the conveyance of the property.

    b.    The Jones Defendants Failed to Present a Disputed Issue of Material Fact

¶ 44     The Jones Defendants also argue that, because the parties never came to an agreement as to the location of the easement, the easement didn't exist, or alternatively, the location of the easement was a question of material fact.  Notwithstanding that the location of the easement was never fixed by agreement of the parties, the district court correctly found that the easement existed and that there wasn't a question of material fact as the location of the easement at Segment 4.

¶ 45    While an instrument granting an easement need not use particular words or talismanic language, it must identify "with 'reasonable certainty' the easement created and the dominant and servient tenements." *Kroesen*, ¶ 32 (quoting *Hornsilver*, 904 P.2d at 1356).  But "lack of specific description does not affect the validity of [an] easement[], particularly where the conduct of parties has over a period of time located it." *Isenberg v. Woitchek*, 356 P.2d 904, 907 (Colo. 1960).

¶ 46    The Jones Defendants take issue with the district court's summary judgment determination as to the location of the easement.  According to the Jones Defendants, there was an issue of material fact as to the location of the easement that should have precluded summary judgment.  But the Jones Defendants don't point us to any evidence in the record showing an issue of material fact.  Indeed, the Jones Defendants state in their briefs that evidence before the court showed that the parties never mutually agreed and cite a note summarizing a conversation between Rexford Lyon and Hans Jones in which Hans Jones acknowledges that he hasn't come to an agreement with Beverly Tennant about the easement location but that an agreement is necessary.  The Jones

Defendants argue that "this created a question of fact on whether the parties had agreed on the easement's location," but instead, the evidence shows that it's undisputed that the parties never agreed on a location, and therefore, there isn't a disputed question of fact.

¶ 47 Because it's undisputed that the parties never agreed on the location of the easement, the district court properly used its authority under *Isenberg* to determine the location of the easement based on the undisputed evidence regarding the parties' conduct. We recognize that, in *Isenberg*, the parties hadn't agreed that they would mutually determine the location of the easement. But, given that the gravamen of the Jones Defendants argument is the nonexistence of the easement due to a failure to mutually agree, once the district court rejected this contention it was proper for the court to step in and determine the location by using the subsequent conduct method in *Isenberg*. *See Isenberg*, 356 P.2d at 905, 907. And because the facts the court relied on in doing so were undisputed, it was proper for the court to do so on summary judgment. Indeed, the evidence presented to the court on the motion for summary judgment established that, subsequent to the creation of the 1987 Easement, owners and guests of the Lyon

25

Parcel used the established road on Segment 4. We therefore conclude that the district court didn't err by granting summary judgment as to the easement location at Segment 4.

## B. Segment 5

¶ 48 The Jones Defendants next contend that the district court erred by finding that Lyon acquired a prescriptive easement over Segments 3 through 5. But because we affirm the district court's finding that Lyon possesses an express easement over Segments 3 and 4, *supra* Part II.A.3, II.A.4, we decline to address whether the district court erred by finding that Lyon had acquired a prescriptive easement over those segments, but we must address the court's decision to make both findings as it relates to Segment 5.

¶ 49 For both Segments 3 and 4, the district court found that an express and prescriptive easement existed and, in both orders, found that the location of the easement was the same regardless of the easement type. While the district court similarly found that Lyon acquired both an express and prescriptive easement for Segment 5, the district court's findings as to the location of each easement are inconsistent. Specifically, in its order finding the express easement, the district court found that the easement was

located "over the Road that ha[d] existed for decades as depicted in Exhibit[] 5." In a footnote to this finding, the court acknowledged Lyon's proposal to move Segment 5 from this "historical location" but then stated, "This Order grants her the right to the easement on the old access road as depicted in Exhibit 5." Exhibit 5 is a map of a survey done by surveyor David Foley in 1989. As is relevant here, Foley performed a second survey in 2021.

¶ 50    In contrast, in its order following trial, the district court found that Lyon acquired a prescriptive easement over Segment 5 but then stated that "[d]ue to the practical difficulties/ impossibility of locating Segment 5 as described in Foley's 1989 survey, the Court will order it be located as described in Foley's 2021 survey."

¶ 51    By finding an express easement at Segment 5 based on Foley's 1989 survey and a prescriptive easement at Segment 5 based on Foley's 2021 survey, the district court has, in essence, created two different easements. We aren't saying that the district court doesn't have authority to move an easement but rather that the district court must make one consistent finding as to the location of Segment 5, and, if the court does find that Segment 5 exists by

express easement, it must follow existing case law to determine the location of the easement.

¶ 52    Because of the district court's inconsistent findings, we must reverse the court's ruling as to the existence and location of an easement over Segment 5 and remand for further findings.

C.    Prelitigation Costs

¶ 53    The Jones Defendants contend that the district court erred by awarding "pre-litigation costs" to Lyon. Because district courts have "considerable discretion" in awarding costs, we review this contention for an abuse of discretion. *Tisch v. Tisch*, 2019 COA 41, ¶ 77 (quoting *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1187 (Colo. App. 2011)). We therefore disturb the award of costs only if it's "manifestly arbitrary, unreasonable, or unfair," *Gallegos Fam. Props., LLC v. Colo. Groundwater Comm'n*, 2017 CO 73, ¶ 37, or if the district court "misconstrues or misapplies the law," *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 29. A district court's interpretation of a rule of civil procedure, however, is subject to de novo review. *Gallegos*, ¶ 37.

¶ 54    Pursuant to C.R.C.P. 54(d), absent an express provision in either statute or the Colorado Rules of Civil Procedure, "reasonable

28

costs shall be allowed as of course to the prevailing party considering any relevant factors which may include the needs and complexity of the case and the amount in controversy." For the court to award a prevailing party costs, the costs must be "reasonable" and "necessary for the development of the case." *Gallegos*, ¶ 41 (first quoting C.R.C.P. 54(d); and then quoting *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 812-14 (Colo. 1993)). Nowhere in C.R.C.P. 54(d), however, does it explicitly state that prelitigation costs aren't awardable to the prevailing party.

¶ 55 Before awarding prelitigation costs to Lyon, the district court made specific findings that the prelitigation costs for documents requested in "anticipation of litigation" were reasonable and necessary because they were "required to support her claims." And that the preparation of applications for county approval was reasonable and necessary because the court "relied heavily on the [application documents] in rendering its ultimate decision."

¶ 56 The Jones Defendants cite *Tisch*, ¶ 78, for the assertion that costs may generally be awarded to the prevailing party when they "are necessarily incurred by reason of the litigation and for the proper preparation for trial." *Id.* (quoting *Mackall v. Jalisco Int'l,*

*Inc.*, 28 P.3d 975, 977 (Colo. App. 2001)). But they don't cite any authority supporting the proposition that prelitigation costs aren't awardable to the prevailing party. Accordingly, the district court didn't per se err by awarding Lyon prelitigation costs. But because we are remanding the case to the district court for further findings on the Segment 5 easement type and location, the court must reconsider its costs award on remand.

### D.    The Jones Defendants' Remaining Claims

¶ 57    In their briefing, the Jones Defendants also contend that we should reverse the district court's judgment granting Lyon a permanent injunction and a utility easement. The Jones Defendants relegate these arguments to a footnote in their opening brief, and the arguments they advance are conclusory at best. We therefore decline to address this contention. *See Prospect 34, LLC v. Gunnison Cnty. Bd. of Cnty. Comm'rs*, 2015 COA 160, ¶ 28 ("When an appellant 'makes [an] argument in a conclusory manner, and it does not cite any authority supporting its position,' we may 'decline to address it.'" (quoting *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v Weinstein*, 2014 COA 171, ¶ 35)).

### E.    Appellate Costs

¶ 58    Lyon asserts that the Jones Defendants' appeal is frivolous and request reasonable attorney fees and double costs pursuant to section 13-17-102(2), C.R.S. 2025, and C.A.R. 38(b).  We decline to award Lyon attorney fees or costs under section 13-17-102 or C.A.R. 38(b) because the Jones Defendants' appeal isn't groundless or frivolous, as evidenced by our decision to partially reverse the district court's rulings.  *See In re Marriage of Martin*, 2021 COA 101, ¶ 42.

### III.    Disposition

¶ 59    The judgment is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.  In particular, on remand, the district court should determine whether Lyon acquired an express or prescriptive easement as to Segment 5 and the location of the easement.  Depending upon its findings as to Segment 5, the district court should also determine whether it must reconsider its award of costs.

JUSTICE MARTINEZ and JUDGE BERNARD concur.